People of the State of Illinois, Appellee, v. Jean Maggi,
Appellant.

Gen. No. 41,563.

Opinion filed April 23, 1941.

RINGER, REINWALD & SOSTRIN, of Chicago, for appellant; PHILIP E. RINGER and MORRIS SOSTRIN, of counsel.

GEORGE F. BARRETT, Attorney General, for appellee; JAMES C. O'BRIEN, JR., Assistant Attorney General, of counsel.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

It appears from the facts that an information was filed on April 1, 1940, in the municipal court of Chicago, charging the defendant with failure to furnish to an agent of the department of labor records of the hours worked by, and the wages paid to, employees of the defendant, as required by "An Act in relation to Minimum Fair Wage Standards for Women and Minors, and providing penalties for violation thereof, approved July 6, 1933, as amended," (ch. 48, Ill. Rev. Stat. 1939, sec. 198 *et seq.* [Jones Ill. Stats. Ann. 45.014 *et seq.*]) — sometimes referred to as the Minimum Wage Law. A motion to quash the information was made by the defendant on the grounds that the act applies only to occupations, as defined in said act, and that the definition of "occupation" in section 2 of said act (ch. 48, Ill. Rev. Stat. 1939, sec. 199 [Jones Ill. Stats. Ann. 45.015]) as "an industry, trade or business or branch thereof or class of work therein" does not include a "profession"; that the practice of beauty culture is the practice of a profession, by reason of which the department of labor did not have authority under the act to prescribe minimum wages for beauty culturists, nor to require an employer to keep a record of hours worked and wages paid to employees, nor to furnish the same to an agent of the department of labor.

It was stipulated that if the respective affiants whose affidavits were filed in support of the motion to quash, had appeared as witnesses, their testimony at the time of the hearing or at the time of the trial would have been as set forth in their respective affidavits, and that the facts contained in the affidavits should have the same force and effect as if the affiants had appeared and testified. The affidavits, being of three beauty culturists, tend to confirm the fact that since the adoption of the beauty culture license law (ch. 16¾, Ill. Rev. Stat. 1939, sec. 15 *et seq.* [Jones Ill. Stats. Ann. 11.20 *et seq.*]) it is necessary for a prospective beauty cul-

turist to acquire a scientific, theoretical education as a preparation for practice in the various branches of the profession, and that the practice of beauty culture in a modern beauty shop requires the use of complicated machinery and processes which require the constant exercise of discretion and judgment; that by virtue of the human element, the conduct of a beauty shop resembles the office of a doctor or dentist more than a factory or mercantile establishment; that the practice of beauty culture is referred to by individuals connected therewith as the practice of a profession, and that members thereof consider the welfare of their patron ahead of their own individual gain. Said affidavits further set forth that in order to secure a beauty culture license it is necessary for an applicant, (among other things), to pass a written theoretical examination in the following subjects, namely: anatomy, including anatomy of the face, neck, arm and scalp; hair and hair dyeing, including chemistry of dyes and cosmetic chemistry; and sterilization and equipment, including use of electric currents and therapeutic lamps. No other evidence was offered by either party on the question of whether or not beauty culture is a profession. The trial court overruled the motion to quash.

At the trial, it was stipulated that Florence Wabel, Inspector for the Department of Labor, went to the beauty shop of the defendant on March 6, 1940, and that her request to examine the records with respect to wages paid to employees of the defendant was refused. Defendant testified that she had only three employees, and that each of them was a registered beauty culturist engaged in the practice of beauty culture.

The trial court in passing upon the questions involved, held that beauty culture was a business and not a profession; that it came within the purview of "occupation" as defined in the law, by reason of

which, the department of labor had authority to prescribe a minimum wage for beauty culture, and found the defendant guilty and assessed a fine of $25 and costs, from which the defendant appeals.

The defense theory is that the law did not authorize the department of labor to prescribe a minimum wage for beauty culture, for the reason that the practice of beauty culture is not within the scope of occupations as defined in the law. The defendant relies upon the following propositions; (1) since the minimum wage law is penal in character, it should be strictly construed; (2) construing the statutory definition of "occupation" in the minimum wage law strictly, the law does not apply to professions; (3) beauty culture is a profession; and (4) the intention of the legislature not to include professions in general and beauty culture, in particular, can be seen from a comparison of the language which is used in the minimum wage law with the language used by the legislature in other statutes.

The appellant (defendant) contends that since the minimum wage law is penal in character, it should be strictly construed, and that failure to keep records of hours worked and wages paid is an offense unknown to the common law; that the foundation of this entire proceedings, therefore, is the minimum wage law; and that, hence, it is fundamental that unless the statutory definition is broad enough to include the practice of beauty culture, the right of the department of labor to deal with beauty culture is lacking, and consequently its right to require the keeping of records and its right to inspect such records is nonexistent and the within prosecution must fail. We agree that the act should be strictly construed, if the act is broad enough to consider the question involved. In *Chicago, Rock Island & Pacific Ry. Co. v. People of the State of Illinois,* 217 Ill. 164, the court in its opinion said:

"Penal statutes are, by well settled principles of law, to be strictly construed, and matters and things which are not clearly included cannot be brought within the operation of such statutes by mere construction. . . . Appellant also cites in support of her contention that the act in question should be strictly construed, the cases of *State v. De Wolfe,* 67 Neb. 321; *Lane v. State of Nebraska,* 120 Neb. 302; *State v. McClellan,* 155 La. 38; and *Peoples Loan & Homestead Ass'n of Joliet v. Keith,* 153 Ill. 609, from which last case the following language appears:

". . . In the construction of statutes, it is a well understood rule that the enumeration of certain specified things which may be exempted, excludes all others not therein mentioned. . . . "In *People ex rel. Hansen v. Collins,* 351 Ill. 551, the Supreme Court in part said:

"It is a general principle of statutory interpretation that the enumeration of certain things implies the exclusion of all others." In the consideration of this suggestion of the appellant, we quite agree with the theory that the *strict construction rule* applies, as well as that the enumeration of certain specified things excludes all others not specified.

Then, the second point that is made by appellant is that, construing the statutory definition of "occupation" in the minimum wage law strictly, the law does not apply to professions. Attention is called to that portion of the act involved in this case (ch. 48, Ill. Rev. Stat. 1939, sec. 199 [Jones Ill. Stats. Ann. 45:015]) which is as follows: "'occupation' means an industry, trade or business or branch thereof or class of work therein in which women or minors are gainfully employed, but does not include domestic service in the home of the employer or labor on a farm." It is urged that unless the practice of a profession clearly comes within the strict meaning of any of these three enumerated classifications—in-

dustry, trade or business—then such practice is not within the scope of the law. It might be well to consider the title of the act (ch. 16¾, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann., vol. 2, p. 287]) under which beauty culturists are licensed, which is entitled ''AN' ACT to regulate the pursuit of the business, art and avocation of a barber, and to insure the better qualifications of persons following such business in the State of Illinois. [Approved June 10, 1909. In force July 1. L. 1909, p. 98, as amended by act approved June 25, 1929. L. 1929, p. 189].'' The practice of beauty culture is further by this chapter regulated by ''AN ACT relating to the practice of beauty culture. [Approved June 30, 1925. L. 1925, p. 174].'' This act relating to the practice of beauty culture provides in section 1, par. 15, for registration, as follows: ''Sec. 1. After the first day of October, 1925, it shall be unlawful for any person to practice, or to attempt to practice beauty culture, without a certificate of registration as a registered beauty culturist, issued by the Department of Registration and Education, pursuant to the provisions of this Act and of the Civil Administrative Code. . . .'' In section 2, par. 16, practice is defined as ''Section 2. Any one or any combination of the following practices constitutes the practice of beauty culture when done for cosmetic or beautifying purposes and not for the treatment of disease or of muscular or nervous disorder. The application of cosmetic preparations to the human body by massaging, stroking, kneading, slapping, tapping, stimulating, manipulating, exercising, cleansing, beautifying, or by means of devices, apparatus or appliances; arranging, dressing, marcelling, curling, waving, cleansing, singeing, bleaching, coloring, dyeing, tinting, or otherwise treating by any means the hair of any person. However, the provisions of this Act shall not authorize any registered beauty cul-

turist to cut or clip the hair of any person unless he has first obtained a certificate of registration as a barber under the provisions of 'An Act to regulate the pursuit of the business, art and avocation of a barber, and to insure the better qualifications of persons following such business in the State of Illinois,' approved June 10, 1909, as amended.'' From the provisions of the act before us, therefore, this law does not apply to any person that may practice giving treatment for disease or muscular or nervous disorder, but is applied strictly to the practice of beauty culture when done for cosmetic or beautifying purposes. It is in the class with the barbers statute, which speaks of the ''Business, art and avocation of a barber.'' Webster's Collegiate Dictionary defines the word ''profession'' as being generally applied to three professions, namely the professions of theology, law and medicine, and to those persons engaged in one of the three callings.

When we come to consider the case from the decisions that have passed upon like questions we find that the statute relating to barbers was before our Supreme Court. The occupation or practice of barbering is defined in ch. 16¾. par. 14.4, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 11.41], as serving or attempting to serve the public generally in any one or any combination of the following:

''To shave or trim the beard or cut the hair; to give facial and scalp massage or facial and scalp treatment with oils, creams or other preparations either by hand or by mechanical appliances; to singe or shampoo the hair or apply a hair tonic; or to dye or tint the hair of any person; provided, however, that any person registered under the provisions of an Act relating to the practice of beauty culture, approved June 30, 1925, as amended, shall be exempt from the provisions of this Act insofar as the practice of beauty

culture under the provisions of said Act is authorized.
. . .'' In the case of *Banghart v. Walsh,* 339 Ill. 132,
the Supreme Court said:

''. . . For the same reasons that the Barbers Law
was held to be constitutional the occupation of beauty-
shop operators and beauty culturists may be the sub-
ject of regulation. . . . The occupation of barber,
as alleged in the bill and admitted by the answer, is
made up principally of men and is practiced upon the
persons of men, while the occupation of beauty-shop
operator or beauty culturist is made up principally of
women and is practiced on the persons of women.
. . .'' It would seem that the chief difference be-
tween barbers and beauty culturists is that the former
are principally men and perform on the person of men,
while the latter are principally women and perform on
the person of women such services as needed by them;
otherwise there seems to be no marked difference be-
tween the two occupations. In *People v. Logan,* 284
Ill. 83, the court said:

''. . . An individual has the right to pursue any
trade, calling or occupation, without restriction, which
is not injurious to the public. The exercise of the
police power for the regulation of any trade, occupa-
tion or calling can be justified only on the ground of
necessity for the health, safety, welfare or comfort of
society. (*Bessette v. People,* 193 Ill. 334.) The trade
of a barber brings him in direct contact with the per-
sons of his patrons, and careless and unsanitary prac-
tices in his trade may induce diseases of the skin.
. . . It cannot be said that the reasonable regula-
tion of the trade of a barber has no relation to the
health and safety of the public. . . .'' The lan-
guage of the court here used applies to the work or
occupation of the beauty culturist, the regulation of
whom is provided largely that such occupation shall
not be done in a careless and unsanitary manner, the
purpose of the legislature being to so regulate the oc-

cupation as to provide proper health and safety measures.

However, the State by its representative suggests that conceding for the purpose of argument that the practice of beauty culture is the practice of a profession, still the practice would be subject to the minimum wage law, and cite *United States of America v. American Medical Ass'n,* 110 F. (2d) 703. In that case the circuit court of appeals for the District of Columbia used this language:

"We think enough has been said to demonstrate that the common law governing restraints of trade has not been confined, as defendant insists, to the field of commercial activity ordinarily defined as 'trade,' but embraces as well the field of the medical profession . . . it follows that we must hold that a restraint imposed upon the lawful practice of medicine,—and a fortiori—upon the operation of hospitals and of a lawful organization for the financing of medical services to its members, is just as much in restraint of trade as if it were directed against any other occupation or employment or business. . . ." The State contends, therefore, that by reason of the provision that " 'occupation' means an industry, trade or business . . . ," the minimum wage law applies in the instant case regardless of whether the practice of beauty culture is classed as a profession or as a business.

After considering the questions involved, we are of the opinion that the defendant (appellant) was engaged in a business which is governed by the regulations of the minimum wage law, which are the subject of this controversy. This opinion is fully sustained by the fact that defendant engaged three beauty culturists who were employed in her business of a beauty shop. She was engaged in such a business as to be subject to the provisions of the act, requiring a report to the department of labor of the State of Illinois,

showing the hours worked by, and the wages paid to, employees of the defendant. As we have indicated, by her admission and because of the fact that she employed help to carry on her business, she should have filed a report as by statute made and provided. Having failed to do so, the court was fully justified in inflicting the penalty of a $25 fine because of her failure to comply with the statute.

We are of the opinion that the defendant is subject to the act. Furthermore, on the question of whether it is a profession, we are inclined to believe from the facts, as stated in this opinion, that she was engaged in an "industry, trade or business" as contemplated by the act.

For the reasons stated, the judgment entered by the court is affirmed.

*Affirmed.*

Denis E. Sullivan and Burke, JJ., concur.