State v. De Wolfe.

---

## STATE OF NEBRASKA v. W. W. DE WOLFE.

FILED FEBRUARY 4, 1903.   No. 13,006.

1. **Statutory Crimes.** In this state all public offenses are statutory, and no person can be punished for any act or omission not made penal by the plain import of the written law.

2. ———: COMMON-LAW DEFINITION. But while there are in this state no common-law crimes, the definition of an act which is forbidden by the statute, but not defined by it, may be ascertained by reference to the common law.

3. ———: ———: NUISANCE. A statute declaring all common nuisances to be criminal is to be construed as prohibiting every act which was by the common law indictable as a nuisance.

4. ———: ———: ———: DEFINITION: VENUE: STATUTE. By section 232 of the Criminal Code the erection, keeping up or continuing and maintaining of any nuisance to the injury of any part of the citizens of this state is declared to be a crime; and this declaration is not limited or restricted by the enumeration in the section of certain acts which are to be "construed and held to have been committed in any county whose inhabitants are or have been injured or aggrieved thereby." The first clause of the section makes all common-law nuisances crimes, and the second clause fixes the venue of some of these crimes.

5. **Criminal Procedure Under the Statute.** In a proceeding brought

Syllabus by court; catch-words by editor.

under section 515 *et seq.* of the Criminal Code, the opinion of
this court affects in no manner the judgment of the court below;
its only function is to determine the law of the case.

WRIT of error, on behalf of the state, from the district
court for Lancaster county. The defendant was indicted
for maintaining a nuisance. A demurrer to the informa-
tion was sustained. Heard below before HOLMES, J. The
county attorney excepted and brought error to this court.
*Exceptions sustained.*

*James L. Caldwell, County Attorney,* *William T. Stevens*
and *Loren E. Winslow,* for the state.

*William M. Morning* and *Charles A. Morning,* contra.

SULLIVAN, C. J.

De Wolfe was charged in the district court for Lancas-
ter county with having unlawfully exposed the citizens of
the villiage of Bennett to a contagious disease by negli-
gently keeping an infected person in a public place. The
defendant demurred to the information, and the court,
being of opinion that the facts alleged did not constitute
a crime, dismissed the prosecution. The county attorney
excepted to the decision and by this proceeding challenges
its correctness.

The ground of the decision is thus stated in the judg-
ment dismissing the action: "The Code particularly sets
forth what acts shall be deemed a nuisance, and provides
a penalty therefor, and failing to specify the acts com-
plained of, no prosecution can be maintained therefor."
The question, then, to be considered, is whether com-
mon-law nuisances which have not been enumerated in the
Criminal Code are punishable as crimes. In this state
all public offenses are statutory; no act is criminal unless
the legislature has in express terms declared it to be so;
and no person can be punished for any act or omission
which is not made penal by the plain import of the
written law. Criminal Code, sec. 251; *Wagner v. State,*

43 Nebr., 1; *Smith v. State,* 12 Ohio St., 466, 80 Am. Dec., 355; *Estes v. Carter,* 10 Ia., 400. But while there are in this state no common-law crimes, the definition of an act which is forbidden by the statute, but not defined by it, may be ascertained by reference to the common law. *Smith v. State, supra; Mitchell v. State,* 42 Ohio St., 383, 385; *State v. Twogood,* 7 Ia., 252; *Estes v. Carter, supra; Pitcher v. People,* 16 Mich., 142; *Prindle v. State,* 21 S. W. Rep. [Tex. Cr. App.], 360. A statute declaring all common nuisances to be criminal is to be construed as prohibiting every act which was by the common law indictable as a nuisance. These nuisances are, as Mr. Greenleaf has said, "a species of offense against the public order and economical regimen of the state." 3 Greenleaf, Evidence, 184. They are generally under the ban of the law because the experience of ages has shown that their tendency is hurtful to the public. Perhaps the common barretor, the common eavesdropper and the common scold are no longer formidable evils, but certainly most of the other common-law nuisances are as injurious and detrimental to society now as they ever were. There is as much reason now as there ever was to repress conduct calculated to injure the health and morals of the people, or to shock their religious feelings, or their sense of decency, or to endanger their lives or property, or to disturb the peace of the neighborhood. Without a clear expression of its purpose so to do, we can not believe that it was the intention of the legislature to so limit the meaning of the word "nuisance" as to make conduct blameless which has always been considered inherently wrong and deserving of punishment. If the theory upon which the trial court decided this case is correct, a large number of common-law nuisances are not crimes in this state, and many vicious, immoral and revolting acts may be committed in public with impunity.

The section of the Criminal Code under which the information was drawn is as follows: "Every person who shall erect, keep up, or continue and maintain any nuisance, to the injury of any part of the citizens of this

state, shall be fined in any sum not exceeding five hundred dollars, at the discretion of the court, and the court shall, moreover, in case of conviction of such offense, order every such nuisance to be abated or removed. And the erecting, continuing, using, or maintaining any building, structure or other place for the exercise of any trade, employment, manufacture or other business which, by occasioning noxious exhalations, noisome or offensive smells, becomes injurious and dangerous to the health, comfort, or property of individuals or the public; the obstructing or impeding, without legal authority, the passage of any navigable river, harbor, or collection of water; or the corrupting or rendering unwholesome, or impure any water-course, stream or water; or unlawfully diverting any such water-course from its natural course or state to the injury or prejudice of others; and the obstructing or incumbering by fences, buildings, structures, or otherwise, any of the public highways, or streets or alleys of any city or village, shall be deemed nuisances; and every person or persons guilty of erecting, continuing, using, or maintaining, or causing any such nuisances shall be guilty of a violation of this section, and in every such case the offense shall be construed and held to have been committed in any county whose inhabitants are or have been injured or aggrieved thereby." Criminal Code, sec. 232. Presumably the legislature intended that every part of this section should have some force and effect. If the enumerated acts were the only ones intended to be made criminal, it was quite unnecessary to declare in the first clause that every person who should erect, keep up or continue and maintain any nuisance to the injury of any part of the citizens of this state should be punished. And it is hardly probable that the words "any nuisance" would have been used if the legislature had in mind only the few nuisances which it was about to enumerate. A more rational interpretation of the section, and one in harmony with what we conceive to be a sound and just view of legislative policy, is that the legislature had in mind two classes of nuisances—those for

which the state must prosecute in the county where they were committed and those for which it may prosecute in any county "whose inhabitants are or have been injured or aggrieved." Some of the nuisances with which the legislature was dealing were specially mentioned because there was a reason for it; others were not specially mentioned because they were too numerous, and there was no reason for particularizing. The first clause of the section made all common-law nuisances crimes and the second clause fixed the venue of some of these crimes.

Our conclusion is that the trial court erred in sustaining the demurrer and dismissing the action.

The county attorney has asked us to pass upon some other questions, but we must decline to do so as they are not properly before us for decision. This opinion affects in no manner the judgment rendered by the district court; by the express terms of the statute its only function is to determine the law of the case. Whether a new prosecution may be set on foot, and whether the first prosecution has arrested the running of the statute of limitations, are matters which we have in this proceeding no authority to determine.

EXCEPTIONS SUSTAINED.