STATE OF NEBRASKA, APPELLEE, V. CALVIN F. COX, APPELLANT.

529 N.W.2d 795

Filed March 31, 1995. No. S-93-1044.

David E. Veath for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

CAPORALE, J.

The Nebraska Court of Appeals affirmed the district court's judgment that the defendant–appellant, Calvin F. Cox, was guilty of driving under the influence of alcohol. *State v. Cox*, 3 Neb. App. 80, 523 N.W.2d 52 (1994). Cox then successfully moved this court for further review, asserting, in summary, that the Court of Appeals erred in failing to rule that the district court had wrongly asserted jurisdiction over certain evidence used to convict him and thus improperly received that evidence. We now affirm the judgment of the Court of Appeals.

Cox was initially charged in the county court for Box Butte County with driving while intoxicated. After the county court sustained Cox' motion to suppress certain evidence, the plaintiff–appellee, the State of Nebraska, successfully moved for dismissal. The State thereafter instituted in the district court the proceedings giving rise to this appeal.

Remarkably enough, although several of Cox' assignments of error in the Court of Appeals centered around the county court's order of dismissal, that order was not made a part of the record until it was supplied in response to this court's order to Cox to show cause why his appeal should not be dismissed. As a consequence, the record now reveals that although the State filed its information in the district court on July 30, 1993, the county court did not dismiss the action pending therein until August 5, 1993, with an order reciting that the matter was being "dismissed without prejudice to re-filing the complaint in the

District Court. All property subject to the Motion to Suppress filed herein is transferred to the jurisdiction of the District Court." Although on October 20, 1993, the district court held a hearing on Cox' motion in that court to suppress "any and all evidence obtained from or about his person" at or near the date of his arrest, a copy of the county court's order was not filed in the district court until December 28, 1994, after this court entered its show cause order.

The error Cox has assigned to the Court of Appeals rests on the provisions of Neb. Rev. Stat. § 29–827 (Reissue 1989), which read:

> Where motions to suppress and for the return of seized property are made in courts inferior to the district court in cases involving violations of state laws, the county attorney may give notice to such court that the property in question will be further required as evidence, may then dismiss the action in such court and refile the complaint in the district court. In its order of dismissal the court shall order transfer of the property to the jurisdiction of the district court.

Cox urges that as the State did not make known to the district court that the county court had transferred to the district court the property which had been within the jurisdiction of the county court and which the county court had suppressed, the district court did not acquire jurisdiction over the property and thus could not receive the property in evidence. More specifically, Cox contends that the district court had no jurisdiction to receive in evidence the printed record of the result of the blood alcohol test performed on him after his arrest.

The question is the meaning of § 29–827. The meaning of a statute is a question of law, in connection with which a reviewing court has an obligation to reach a conclusion independent of that of the inferior court. *State v. Wragge*, 246 Neb. 864, 524 N.W.2d 54 (1994).

Cox' argument assumes that by virtue of its being tangible, the written record of the blood alcohol test result is "property" in the sense in which that term is used in § 29–827. He then postulates that since the district court was not supplied with an

order of the county court transferring jurisdiction over that item to the district court, the district court lacked jurisdiction over it and thus could not receive the item into evidence.

The argument suffers from two fatal fallacies. The first is that it equates the suppressing of evidence with the returning of seized property. However, § 29–827 does not equate the two matters, for it addresses "motions to suppress *and* for the return of seized property." (Emphasis supplied.) The statute thereby contemplates separate motions to achieve different results.

Properly so, for while with respect to searches the principal object of the Fourth Amendment to the U.S. Constitution is the protection of privacy rather than property, *Warden v. Hayden*, 387 U.S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967), seizures nonetheless involve property interests, *Soldal v. Cook County*, 506 U.S. 56, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992) (Fourth Amendment protects against unreasonable "seizures," thereby protecting property interests), and *United States v. Jacobsen*, 466 U.S. 109, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984). As noted in *Soldal*, 506 U.S. at 65-66:

> Suppose . . . that police officers lawfully enter a house, by either complying with the warrant requirement or satisfying one of its recognized exceptions—*e.g.*, through a valid consent or a showing of exigent circumstances. If they come across some item in plain view and seize it, no invasion of personal privacy has occurred. . . . If the boundaries of the Fourth Amendment were defined exclusively by rights of privacy, "plain view" seizures would not implicate that constitutional provision at all.

See, also, *U.S. v. Conley*, 856 F. Supp. 1010 (W.D. Pa. 1994).

As a result of the evolution from early common–law emphasis on property rights to concerns over privacy interests, the U.S. Supreme Court has established that a defendant could move for suppression in a criminal trial even though under the facts the defendant could not sustain a property–based action of replevin or trespass for the thing suppressed. See *Warden, supra*, citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S. Ct. 182, 64 L. Ed. 319 (1920), *overruled on other grounds, United States v. Havens*, 446 U.S. 620, 100 S. Ct. 1912, 64 L. Ed. 2d 559 (1980).

In *Silverthorne Lumber Co.*, numerous papers were seized in violation of the Fourth Amendment. Photographs and copies were then made and were used as the basis of an indictment. The U.S. Supreme Court rejected the notion that even though the papers were illegally obtained, the government could copy them, return the originals, and then use the knowledge it had thus obtained to file an information against the defendants and compel the defendants to produce the originals through lawful prosecution.

What is important in *Silverthorne Lumber Co.* for our purposes is the clear divergence between property-based remedies such as trespass and replevin for the return of seized property and the privacy-based remedy of suppression of evidence. In the former, one may vindicate one's property interest in the thing unlawfully seized by obtaining its return, but the privacy interest in the information derived from the thing unlawfully seized is vindicated by suppressing the information. See *Warden, supra.* Thus, the suppression of evidence does not necessarily entitle the aggrieved person to its return. *Warden, supra.*

The second fallacy in Cox' argument is that it seeks to isolate the word "property," as used in the last sentence of § 29-827, from the phrases "seized property" and "property in question," as used in the first sentence of the statute. The applicable rules are that in reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. Moreover, it is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute. *State ex rel. Perkins Cty. v. County Superintendent, ante* p. 573, 528 N.W.2d 340 (1995).

Application of those rules leads to the conclusion that the term "property," as used in the last sentence of § 29-827, refers to the same things as do the phrases "seized property" and "property in question," as used in the first sentence of the statute.

The phrase "seized property" means property seized in

which the defendant or another person has a possessory interest. See *United States v. Jacobsen*, 466 U.S. 109, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984). "[The] text [of the Fourth Amendment] protects two types of expectations, one involving 'searches,' the other 'seizures.'" 466 U.S. at 113. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Id.*

Thus, while the actual blood taken from Cox may qualify as seized property, an issue not raised, the written report of the test result is no more such property than are the observations made by the officer who seized Cox himself. After all, the report is simply a written record of the observations made during the testing of the blood.

The reason for § 29–827 is perhaps best illustrated by *State v. Allen*, 159 Neb. 314, 66 N.W.2d 830 (1954). Therein, the State seized some pheasants as part of its prosecution of Allen for unlawfully possessing and transporting game birds. After the State presented its evidence, Allen successfully moved for a dismissal. Several months later, Allen made application to the county court for return of the pheasants; the State objected, claiming that the birds were contraband and that the proper procedure was an action in replevin. However, the county court ordered the pheasants pulled out of refrigeration and returned to Allen in 20 days. Before that could take place, the State filed a petition in error in the district court, alleging that the county court erred by ordering the birds returned.

The district court held that by virtue of being admitted into evidence, the birds left the possession of the law enforcement agency and entered into the possession and custody of the county court. As a result, the county court had "sole and exclusive jurisdiction to order disposition of the said property." *Id.* at 319, 66 N.W.2d at 834. On appeal to this court, the State contended that in a criminal case the county court was without authority to order contraband received in evidence returned to the defendant following dismissal of the complaint. Noting that there was no bill of exceptions and thus no record that the birds were contraband, we held that after the birds had been offered into evidence, they were in custodia legis and thus under the control of the county court. Therefore, the district court had

correctly affirmed the county court's order to return the birds to Allen.

Section 29–827 constitutes an exception to the county court's power to otherwise dispose of seized property. When given notice by the county attorney of an intent to dismiss and refile in district court, the county court must relinquish the seized property to the jurisdiction of the district court.

While there may have been other bases upon which the written report of the test result should have been excluded from the evidence, a matter with which we do not concern ourselves, the basis advanced by Cox has no merit.

Accordingly, as noted in the first paragraph of this opinion, we affirm the judgment of the Court of Appeals.

AFFIRMED.