STATE OF NEBRASKA, APPELLEE, V.
GARY L. BURLISON, APPELLANT.
583 N.W. 2d 31

Filed August 14, 1998.    No. S-96-755.

Gary L. Burlison, pro se.

Don Stenberg, Attorney General, and Jay C. Hinsley for appellee.

CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

PER CURIAM.

Gary L. Burlison appeals from an order of the district court for Dakota County denying his motion for postconviction relief. We granted Burlison's petition to bypass the Nebraska Court of Appeals and now affirm, although for reasons different from those stated by the district court.

## FACTS

In an amended information filed on December 7, 1992, the State charged Burlison with aiding and abetting another to commit the offense of murder in the second degree as defined by Neb. Rev. Stat. § 28-304 (Reissue 1995). Burlison pleaded guilty to the charge under the terms of a plea agreement. After accepting his plea, the district court sentenced Burlison to a term of 25 years' imprisonment.

On October 19, 1994, Burlison filed a motion for postconviction relief alleging, inter alia, that the State violated his state and federal constitutional rights by failing to include the element of malice in the amended information. Noting that it had overruled a previous motion for postconviction relief filed by Burlison, the district court denied his second motion because there was no showing that the grounds relied upon were unavailable at the time of the first motion. Burlison's appeal of this order was dismissed by the Court of Appeals on April 21, 1995, because of his failure to file a brief.

On June 7, 1996, Burlison filed a third motion for postconviction relief, again alleging that the State violated his state and

federal constitutional rights by failing to "allege the essential element of malice" in the amended information. On July 1, 1996, the district court denied the motion on grounds that it was based upon the same issues raised in the previous two motions which had been denied. Burlison perfected a timely appeal from this order, and we granted his petition to bypass the Court of Appeals.

## ASSIGNMENTS OF ERROR

Burlison's four assignments of error all relate to his contention that his state and federal constitutional rights were denied because the amended information omitted malice as an element of the crime of aiding and abetting second degree murder.

## STANDARD OF REVIEW

Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the courts below. *State v. Irons*, 254 Neb. 18, 574 N.W.2d 144 (1998); *State v. Roucka*, 253 Neb. 885, 573 N.W.2d 417 (1998).

## ANALYSIS

### POSTCONVICTION RELIEF

A defendant moving for postconviction relief must allege facts which, if proved, constitute a denial or violation of his or her rights under the Nebraska or U.S. Constitution. See, *State v. Bowen*, 254 Neb. 863, 580 N.W.2d 555 (1998); *State v. Boppre*, 252 Neb. 935, 567 N.W.2d 149 (1997). Once a motion for postconviction relief has been judicially determined, any subsequent motion for such relief from the same conviction and sentence may be dismissed unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the prior motion was filed. *State v. Bowen, supra*; *State v. Lindsay*, 246 Neb. 101, 517 N.W.2d 102 (1994). A motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and could have been litigated on direct appeal. *State v. Bowen, supra*; *State v. Jones*, 246 Neb. 673, 522 N.W.2d 414 (1994).

Burlison argues that his prior motions for postconviction relief should not result in a procedural default, because of our reasoning in *State v. Hall*, 249 Neb. 376, 379-80, 543 N.W.2d 462, 465 (1996), where we held that a person convicted of murder in the second degree based upon his plea of guilty was entitled to postconviction relief because the information did not allege the element of malice, and for that reason "did not sufficiently charge him with a crime." In *State v. Hall*, the trial court had denied the defendant's motion for postconviction relief, reasoning that he "could have brought to the court's attention the erroneous information either on direct appeal or in the initial postconviction proceeding." 249 Neb. at 379, 543 N.W.2d at 464. Finding plain error, we reversed the trial court's decision, reasoning that "[t]o use a procedural default or waiver as a means of ignoring a plain error that results in an unconstitutional incarceration would place form over substance; would damage the integrity, reputation, and fairness of the judicial process; and would render the plain error doctrine and postconviction relief remedies meaningless." *Id.* at 380, 543 N.W.2d at 465.

The present matter raises substantially similar issues and is procedurally similar to *State v. Hall*. Accordingly, despite Burlison's failure to diligently prosecute his appeal from the denial of his prior motion for postconviction relief, we will address the issues raised.

### SECOND DEGREE MURDER

Section 28-304, which has been in its present form since 1979, provides in relevant part: "(1) A person commits murder in the second degree if he causes the death of a person intentionally, but without premeditation." Following the entry of Burlison's sentence, we decided *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994), in which we held that it was plain error to omit the element of malice from a jury instruction defining second degree murder under § 28-304(1). In *State v. Manzer*, 246 Neb. 536, 519 N.W.2d 558 (1994), we applied *State v. Myers* in an appeal from a conviction based upon a plea of guilty, holding that the failure to include malice in the amended information to which the plea was entered constituted plain

error. Thereafter, in *State v. Ryan*, 249 Neb. 218, 223, 543 N.W.2d 128, 135 (1996), we applied the holding from *State v. Myers* to all cases involving a charge of murder in the second degree by holding that "under § 28-304(1), malice is a necessary element of second degree murder." We have continued to adhere to the rule established in *State v. Myers*, as articulated in *State v. Ryan*, in subsequent cases addressing second degree murder in Nebraska. See, e.g., *State v. Randall*, 249 Neb. 718, 545 N.W.2d 94 (1996); *State v. White*, 249 Neb. 381, 543 N.W.2d 725 (1996); *State v. Hall*, 249 Neb. 376, 543 N.W.2d 462 (1996); *State v. Barfoot*, 248 Neb. 335, 534 N.W.2d 572 (1995); *State v. Lowe*, 248 Neb. 215, 533 N.W.2d 99 (1995); *State v. Plant*, 248 Neb. 52, 532 N.W.2d 619 (1995); *State v. Eggers*, 247 Neb. 989, 531 N.W.2d 231 (1995); *State v. Wilson*, 247 Neb. 948, 530 N.W.2d 925 (1995); *State v. Williams*, 247 Neb. 931, 531 N.W.2d 222 (1995); *State v. Secret*, 246 Neb. 1002, 524 N.W.2d 551 (1994); *State v. Martin*, 246 Neb. 896, 524 N.W.2d 58 (1994); *State v. Dean*, 246 Neb. 869, 523 N.W.2d 681 (1994); *State v. Ladig*, 246 Neb. 542, 519 N.W.2d 561 (1994); *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994); *State v. Blackson*, 245 Neb. 833, 515 N.W.2d 773 (1994), *overruled on other grounds, State v. White*, 249 Neb. 381, 543 N.W.2d 725 (1996); *State v. Jones*, 245 Neb. 821, 515 N.W.2d 654 (1994). Thus, according to this line of precedent, malice is an element of second degree murder notwithstanding the fact that § 28-304(1) does not expressly specify it as such.

This rule marked a departure from our prior cases holding that under Nebraska law all crimes are statutory and no act is criminal unless the Legislature has in express terms declared it to be so. See, *State v. Schneckloth, Koger, and Heathman*, 210 Neb. 144, 313 N.W.2d 438 (1981); *State v. Ewert*, 194 Neb. 203, 230 N.W.2d 609 (1975); *State v. Gallegos*, 193 Neb. 651, 228 N.W.2d 615 (1975); *State v. Hauck*, 190 Neb. 534, 209 N.W.2d 580 (1973); *Sedlacek v. State*, 147 Neb. 834, 25 N.W.2d 533 (1946); *Behrens v. State*, 140 Neb. 671, 1 N.W.2d 289 (1941); *Lane v. State*, 120 Neb. 302, 232 N.W. 96 (1930); *State v. De Wolfe*, 67 Neb. 321, 93 N.W. 746 (1903). In other contexts, we have adhered to this line of precedent. See, e.g., *State v. Burnett*, 254 Neb. 771, 579 N.W.2d 513 (1998); *State v. Pattno*, 254 Neb.

733, 579 N.W.2d 503 (1998); *State v. Parks*, 253 Neb. 939, 573 N.W.2d 453 (1998). We have also observed that there are no common-law crimes in Nebraska, *State v. Schaaf*, 234 Neb. 144, 449 N.W.2d 762 (1989); *State v. Douglas*, 222 Neb. 833, 388 N.W.2d 801 (1986), and that within constitutional boundaries, the Legislature is empowered to define a crime, *State v. Pettit*, 233 Neb. 436, 445 N.W.2d 890 (1989), *overruled on other grounds, State v. Jones*, 245 Neb. 821, 515 N.W.2d 654 (1994).

Moreover, it is a fundamental principle of statutory construction that penal statutes are to be strictly construed. *State v. Beethe*, 249 Neb. 743, 545 N.W.2d 108 (1996); *State v. Brozovsky*, 249 Neb. 723, 545 N.W.2d 98 (1996). In the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning, and when the words of a statute are plain, direct, and unambiguous, no interpretation is necessary or will be indulged to ascertain their meaning. *State v. Atkins*, 250 Neb. 315, 549 N.W.2d 159 (1996); *State v. Wragge*, 246 Neb. 864, 524 N.W.2d 54 (1994). Finally, we have repeatedly stated that it is not within the province of the courts to read a meaning into a statute that is not there, nor to read anything direct and plain out of a statute. *State v. Atkins, supra*; *State v. Cox*, 247 Neb. 729, 529 N.W.2d 795 (1995).

As noted previously, *State v. Hall*, 249 Neb. 376, 543 N.W.2d 462 (1996), is factually and procedurally parallel to the issues presented in this case. Burlison's argument that *State v. Hall* requires us to reach the same result in his case is based upon the fundamental legal doctrine of stare decisis, under which an appellate court is bound to follow the rule of law established in a prior case with a like state of facts in deciding a case subsequently presented. Specifically,

> "The doctrine of stare decisis is grounded on public policy and, as such, is entitled to great weight and must be adhered to, unless the reasons therefor have ceased to exist, are clearly erroneous, or are manifestly wrong and mischievous or unless more harm than good will result from doing so."

*Muller v. Nebraska Methodist Hospital*, 160 Neb. 279, 282, 70 N.W.2d 86, 88 (1955), *overruled in part, Myers v. Drozda*, 180 Neb. 183, 141 N.W.2d 852 (1966).

The decisions of this court which establish legal precedent under the doctrine of stare decisis arise from our statutory authority to review orders entered by the lower courts for "errors appearing on the record." Neb. Rev. Stat. § 25-1911 (Reissue 1995). When a case requires the interpretation of a statute, we have "an obligation to reach an independent, *correct* conclusion irrespective of the determination made by the courts below." (Emphasis supplied.) *State v. Irons*, 254 Neb. 18, 20, 574 N.W.2d 144, 147 (1998). Accord *State v. Roucka*, 253 Neb. 885, 573 N.W.2d 417 (1998). Thus, when we perceive that a lower court has erroneously interpreted a statute, we are obligated to correct the error. The duty of this court to ensure that statutes are interpreted correctly is in no way diminished when the error we perceive is our own. While the doctrine of stare decisis forms the bedrock of our common-law jurisprudence, it does not require us to blindly perpetuate a prior interpretation of the law if we conclude that it was clearly incorrect.

Upon further consideration, we determine that our prior decisions interpreting § 28-304(1) to include malice as a necessary element of the crime of second degree murder were clearly erroneous and therefore should be overruled. In keeping with our long-established rules of statutory construction, we conclude that the language of § 28-304(1) should be given its plain and ordinary meaning in light of the Legislature's removal of the term "malice" from the definition of second degree murder in its 1977 revision of the criminal code. See, *State v. Ryan*, 249 Neb. 218, 543 N.W.2d 128 (1996) (Gerrard, J., dissenting); *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994) (Wright, J., dissenting). Moreover, we conclude that construction of § 28-304(1) to include only those elements which the Legislature specifically included in its text does not result in constitutional infirmity. We are now persuaded that when read in conjunction with Neb. Rev. Stat. § 28-102(1) (Reissue 1995), which defines the general purpose of the criminal code as "[t]o forbid and prevent conduct that unjustifiably and inexcusably inflicts or threatens substantial harm to individual or public interests," and the provisions of Neb. Rev. Stat. §§ 28-1406 to 28-1413 (Reissue 1995) dealing with justification for use of force, the Legislature's definition of second degree murder set

forth in § 28-304(1) is not unconstitutionally overbroad. See *State v. Ryan, supra* (Gerrard, J., dissenting). Likewise, we are satisfied that in this context the statutes dealing with justification for use of force do not impose upon a defendant an unconstitutional shifting of the burden of proof, but, rather, a constitutionally permissible allocation of the burden of production, which when met by anything more than a scintilla of evidence requires the State to prove the lack of justification beyond a reasonable doubt. See, *id.*; *State v. Stahl,* 240 Neb. 501, 482 N.W.2d 829 (1992). See, also, *Patterson v. New York,* 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977); *Martin v. Ohio,* 480 U.S. 228, 107 S. Ct. 1098, 94 L. Ed. 2d 267 (1987). Insofar as *State v. Myers,* 244 Neb. 905, 510 N.W.2d 58 (1994), and subsequent decisions of this court hold that malice is a necessary element of second degree murder as defined by § 28-304(1), they are overruled.

One who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he were the principal offender. Neb. Rev. Stat. § 28-206 (Reissue 1995); *State v. Mantich,* 249 Neb. 311, 543 N.W.2d 181 (1996). Under our holding today, the only elements of murder in the second degree are those which the Legislature included in § 28-304(1), namely, the causation of death intentionally but without premeditation. Thus, Burlison was not deprived of any state or federal constitutional right by the fact that the amended information to which he entered his plea of guilty made no reference to malice, and he is therefore not entitled to postconviction relief. The judgment of dismissal is affirmed.

AFFIRMED.

WHITE, C.J., participating on briefs.

WHITE, C.J., dissenting.

The majority criticizes the previous decision of this court for not following the teachings of *State v. Atkins,* 250 Neb. 315, 549 N.W.2d 159 (1996), i.e., that it is not within the province of the courts to read a meaning into a statute that is not there.

However, in *State v. Koperski,* 254 Neb. 624, 640, 578 N.W.2d 837, 847 (1998), this court, in a unanimous opinion, said:

The absence of words in a statute requiring a certain mental state does not warrant the assumption that the Legislature intended to impose strict liability. To the contrary, at least for an offense as serious as sexual assault, it should be presumed that the Legislature intended to follow the usual mens rea requirement unless excluded expressly or by necessary implication. See 1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 5.1(b) (1986).

The majority condemns a principle that it embraced 3 short months ago.

Killing with malice is the killing of a victim without legal justification. See *State v. Drinkwalter*, 242 Neb. 40, 493 N.W.2d 319 (1992). The intentional killing of a person may or may not constitute a crime. Indeed, the intentional killing by a police officer of a fleeing felon, the execution of a condemned person by a warden according to the direction of an appropriate court, and this court's direction to execute a convicted murderer are examples of killings that are not criminal offenses. Logically, how are these acts to be distinguished from criminal responsibility for a death absent malice? Certainly not from the words of the statute, since the statute plainly embraces criminal and noncriminal acts.

In order to cure the infirmities of the second degree murder statute, the majority relies on Neb. Rev. Stat. § 28-102(1) (Reissue 1995), the purpose of which is "[t]o forbid and prevent conduct that unjustifiably and inexcusably inflicts or threatens substantial harm to individual or public interests." Thus, the majority is in fact saying that it is necessary that the State prove that an essential element of second degree murder is the unjustifiable and inexcusable infliction of harm to individual or public interests (i.e., malice).

Inexplicably, after embracing in effect the essence of malice as a requirement of the crime, the majority says that the burden of proving that the killing was justifiable and excusable falls on the defendant. However, if anything more than a mere scintilla of evidence is introduced by the defendant, the State must prove beyond a reasonable doubt the lack of justification. We are then faced with the proposition that malice continues to be an ele-

ment the State must prove when met with any evidence by the defendant that the killing was justifiable.

The majority in effect does not overrule our previous cases defining malice as an essential element of crimes; it simply shifts the burden of going forward to the defendant in a very constitutionally suspect manner. The interesting aspect of the majority opinion is that a charge of second degree murder could be submitted to a jury on simple proof of the killing of one person by another unless the defendant affirmatively offers proof of justification. Thus, in all the examples stated above, absent proof of justification, all could logically be charged with second degree murder and convicted.

CAPORALE, J., joins in this dissent.

CAPORALE, J., dissenting.

I respectfully dissent, for I would reverse the judgment of the district court.

I understand that stare decisis ought not be, and is not, so inflexible a doctrine as to prohibit the correction of judicial error. However, that common-law principle, see *Kresha v. Kresha*, 216 Neb. 377, 344 N.W.2d 906 (1984), yields to the specific rule of statutory construction applicable to the circumstances presented; namely, that as a general matter, where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of its intent. *Mayfield v. Allied Mut. Ins. Co.*, 231 Neb. 308, 436 N.W.2d 164 (1989); *Nelson v. Dolan*, 230 Neb. 848, 434 N.W.2d 25 (1989); *Erspamer Advertising Co. v. Dept. of Labor*, 214 Neb. 68, 333 N.W.2d 646 (1983).

After the enactment of the language presently found in Neb. Rev. Stat. § 28-304 (Reissue 1995) became operative on January 1, 1979, 1977 Neb. Laws, L.B. 38, this court unanimously wrote in *State v. Clermont*, 204 Neb. 611, 284 N.W.2d 412 (1979), that malice was an element of second degree murder. Specifically noting the absence of the word "malice" in § 28-304, this court adhered to the *Clermont* interpretation in *State v. Rowe*, 214 Neb. 685, 335 N.W.2d 309 (1983), and in a number of other cases. *State v. Franklin*, 241 Neb. 579, 489

N.W.2d 552 (1992); *State v. Dean*, 237 Neb. 65, 464 N.W.2d 782 (1991); *State v. Trevino*, 230 Neb. 494, 432 N.W.2d 503 (1988); *State v. Ettleman*, 229 Neb. 220, 425 N.W.2d 894 (1988); *State v. Moniz*, 224 Neb. 198, 397 N.W.2d 37 (1986). Thus, had the Legislature concluded that notwithstanding the historical understanding of the crime of second degree murder, this court had misread the legislative intent, the Legislature had ample opportunity long before this court again unanimously applied its earlier interpretation in *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994), and long before any constitutional concerns were expressed in *State v. Ryan*, 249 Neb. 218, 543 N.W.2d 128 (1996), and *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994), to have amended § 28-304 so as to have clearly declared that it intended to remove malice as a statutory element of second degree murder, much as it did ab initio with respect to the crime of manslaughter. See 1977 Neb. Laws, L.B. 38, codified at Neb. Rev. Stat. § 28-305 (Reissue 1995) (one "commits manslaughter if he kills another without malice"). Instead, the Legislature elected to remain silent.

Lamentably, this is not the first time I have had occasion to suggest it appears that this tribunal applies the legislative acquiescence rule when a majority of its members is comfortable with the result the rule produces and ignores the rule when the situation is otherwise. See, *Nippert v. Shinn Farm Constr. Co.*, 223 Neb. 236, 388 N.W.2d 820 (1986) (Caporale, J., dissenting, joined by Boslaugh and Hastings, JJ.); *Friedeman v. State*, 215 Neb. 413, 339 N.W.2d 67 (1983) (Caporale, J., dissenting, joined by Hastings, J.). As noted in those dissents, if the law changes based merely upon the makeup of this court at any particular time, the law loses predictability and becomes arbitrary and capricious.

WRIGHT, J., concurring.

I write to address the assertions that the Legislature acquiesced in this court's holding that malice is an essential element of second degree murder and that the majority opinion herein, which overrules that holding, is based solely upon the makeup of the court, thus causing the law to lose predictability and become arbitrary and capricious.

In Nebraska, all crimes are statutory. In 1977, the Legislature amended Neb. Rev. Stat. § 28-402 (Reissue 1975) and purposely omitted malice from the elements of second degree murder. In explaining the revisions to the criminal code, the Judiciary Committee's summary of L.B. 38 stated:

> Section 19 is comparable to Section 28-402 or second degree murder. It differs from the present section, which requires the killing to be purposely and maliciously, whereas the new code requires that the cause of death of a person need only be done intentionally. The penalty under existing law and this section is the same, i.e., 10 years to life imprisonment.

Summary of Contents, 85th Leg., 1st Sess. 3 (Jan. 24-26, 1977). Section 19 of 1977 Neb. Laws, L.B. 38, was codified as Neb. Rev. Stat. § 28-304 (Reissue 1995), which became operative January 1, 1979. See 1978 Neb. Laws, L.B. 748. Following this change in the second degree murder statute, § 28-304 required no statutory construction, because the Legislature had intentionally removed the element of malice from second degree murder and the remaining elements were unambiguous.

Presently, Nebraska's second degree murder statute states that "[a] person commits murder in the second degree if he causes the death of a person intentionally, but without premeditation." § 28-304. Beginning with *State v. Rowe*, 214 Neb. 685, 335 N.W.2d 309 (1983), and continuing until *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994), this court affirmed second degree murder convictions charged in the language of § 28-304. During that time, no defendant challenged the absence of malice from an information or jury instructions.

However, in *Myers*, this court held that the omission of malice from the jury instruction on second degree murder was prejudicially erroneous and plain error. In *Myers*, 244 Neb. at 908, 510 N.W.2d at 63, we stated: "[T]his court has continued to require malice as an element of second degree murder." We reached this conclusion despite the fact that the Legislature had deliberately removed malice as an element of second degree murder.

An appellate court is empowered to construe a statute, but it may not assume the role of the Legislature. Therefore, judicial

construction is constitutionally permissible, but judicial legislation is not. Insertion of the element of malice into § 28-304 was not a judicial construction of the legislative intent of the statute, but amounted to judicial legislation, which violated article II, § 1, of the Nebraska Constitution. Thus, the majority has properly overruled those cases which held that malice was an element of second degree murder.

As to the issue of legislative acquiescence, in *State v. Grimes*, 246 Neb. 473, 484, 519 N.W.2d 507, 516 (1994), the court stated: "[D]efining second degree murder without malice would make the performance of many noncriminal acts illegal. . . . Therefore, absent malice, Neb. Rev. Stat. § 28-304 (Reissue 1989), would be unconstitutionally vague and overbroad." In *Grimes*, the court advised the Legislature that any subsequent amendment to § 28-304 which would make it more obvious that malice had intentionally been removed would be declared unconstitutional. Thus, the Legislature's failure to amend § 28-304 cannot evidence legislative acquiescence to the court's declaration that malice was an element of second degree murder.

CONNOLLY and GERRARD, JJ., join in this concurrence.