# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-1935

_____

Lucky I. Iromuanya

*Petitioner - Appellant*

v.

Scott Frakes, Director, Nebraska Department of Correctional Services

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: May 10, 2017
Filed: August 7, 2017

_____

Before RILEY, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

Lucky Iromuanya appeals the district court's[1] denial of his 28 U.S.C. § 2254 petition for habeas corpus relief. We affirm.

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

## I.     BACKGROUND

The following facts were set forth by the Nebraska Supreme Court and are presumed to be correct under our standard of review. See 28 U.S.C. § 2254(e). Iromuanya was at a college house party in Lincoln, Nebraska, in April 2004 when a dispute arose over an allegedly stolen shot glass collection. A house resident confronted Iromuanya and Iromuanya's friend when they sought to leave the party. She asserted that no one was leaving the party until the shot glasses were recovered. A shoving match ensued between her boyfriend, Nolan Jenkins, and Iromuanya, wherein Iromuanya punched Jenkins and the parties were separated. Jenkins was subsequently informed that Iromuanya had not taken the shot glasses, and approximately five minutes later, Jenkins walked back toward Iromuanya, ostensibly to shake hands and settle the matter, but Iromuanya again shoved Jenkins when Jenkins got close to him. Another scuffle ensued, but this time Iromuanya took a handgun from his pants and fired a shot. The bullet hit Jenkins, but traveled through him and hit Jenna Cooper, another resident at the house where the party took place. Cooper subsequently died of her injuries. Iromuanya left the scene but was arrested later that evening. In a videotaped statement taken that evening (which was shown to the jury during trial), Iromuanya informed the police that he *did* intend to shoot the gun but did *not* intend to hit anyone, and that he instead attempted to shoot to the side of Jenkins to scare him. State v. Iromuanya (Iromuanya I), 719 N.W.2d 263, 273-77 (Neb. 2006).

The primary issue at Iromuanya's trial was whether the state could prove second-degree murder or only manslaughter for Cooper's death and the attempted versions of those crimes for Jenkins' shooting. Iromuanya requested that the trial court include "malice" as an element of the second-degree-murder instruction (which was declined) and also proposed his own theory-of-defense instruction, which spelled out his assertion from the taped statement that he did not intend to shoot anyone but only intended to scare them. The court declined this request, finding that the other

-2-

instructions adequately conveyed Iromuanya's theory of defense. Iromuanya apparently requested a self-defense instruction, which the court also declined to give.

On the attempted second-degree-murder charge (involving Jenkins), the court instructed the jury that it could find Iromuanya either guilty or not guilty of the charge, but it did not include an option for finding Iromuanya guilty of a lesser included offense of attempted manslaughter. Nor did the attempted second-degree-murder instruction include any instructions about lack of provocation. With regard to the charge of second-degree murder (of Cooper), the court did include manslaughter as a lesser included offense, and included instructions about sudden-quarrel provocation, but it did so in a "step" instruction–meaning that the jury would only consider manslaughter and sudden-quarrel provocation if it found Iromuanya not guilty of second-degree murder and proceeded to the next part of the instruction. During deliberations, an additional instruction was given after the jury posed a question about the effect of a "sudden quarrel" on *attempted* second-degree murder. The court instructed the jury that it could not consider "sudden quarrel" when deciding guilt on the charge of attempted second-degree murder. The jury ultimately convicted Iromuanya of the attempted second-degree murder of Jenkins, second-degree murder of Cooper, and both weapons charges, and he was sentenced to an aggregate prison term of 70 years to life imprisonment. Id. at 273.

The Nebraska Supreme Court affirmed Iromuanya's conviction on direct appeal. In that appeal, Iromuanya argued that the trial court erred in failing to instruct the jury on malice as an element of second-degree murder and failed to give his requested self-defense instruction. Id. at 286. The Nebraska Supreme Court held that because "[m]alice is not an element of second degree murder . . . the district court . . . did not err in refusing to instruct that it was." Id. at 289 (citing Neb. Rev. Stat. § 28-304(1); State v. Burlison, 583 N.W.2d 31 (Neb. 1998)). The court further held that there was "no evidence in the record to support a reasonable and good faith belief

that Iromuanya was threatened with death or serious bodily harm at the time he fired the handgun" and a self-defense instruction was therefore not warranted. Id. at 290.

During state postconviction proceedings, Iromuanya challenged his trial counsel's effectiveness for failing to properly challenge the jury instructions. On appeal of the denial of postconviction relief, the Nebraska Supreme Court again denied relief. State v. Iromuanya (Iromuanya II), 806 N.W.2d 404 (Neb. 2011). As relevant to this appeal, after Iromuanya I but before Iromuanya II, the Nebraska Supreme Court decided State v. Ronald Smith, 806 N.W.2d 383, 394 (Neb. 2011),[2] which overruled an earlier case holding that manslaughter was an unintentional crime, and held that the offense of manslaughter was an *intentional* killing without malice, upon a sudden quarrel. In Iromuanya II, the court held that counsel was not ineffective for not anticipating this change in the law, and also held that the state was not constitutionally required to prove a lack of sudden-quarrel provocation for the attempt to cause Jenkins' death. 806 N.W.2d at 435.

Iromuanya filed the current 28 U.S.C. § 2254 petition for habeas corpus relief in 2012, raising an ineffective assistance of counsel claim for counsel's deficient performance during plea negotiations and for failing to object to the sudden-quarrel jury instruction as a step instruction for second-degree murder. Iromuanya also alleged that the following due process violations occurred during his trial: that the trial court failed to include manslaughter as a lesser included offense of second-degree murder; failed to instruct that the prosecutor must prove the absence of a sudden quarrel beyond a reasonable doubt; and failed to properly instruct the jury on the distinction between "intent to kill" and "intent to kill resulting from a sudden quarrel."

---

[2]There are two Nebraska cases relevant to the issues in this case wherein the defendant's surname is Smith. We will differentiate them by including the defendant's first name in the citation.

The district court held that the ineffective assistance claims failed on the merits, because the Nebraska Supreme Court's determination that counsel's performance was not deficient was not an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984), nor was it an unreasonable determination of the facts in light of the evidence adduced at trial. See 28 U.S.C. § 2254(d). With regard to the due process claims, the district court determined that the claims were not fairly presented to the state courts and were thus procedurally defaulted. However, the court went on to discuss and reject the due process claims on the merits, noting that at the time of Iromuanya's trial, manslaughter on a sudden quarrel was not a lesser included offense of second-degree murder. The due process claims were certified for appellate review.

## II.    DISCUSSION

### A.    Standard of Review

We review petitions for writ of habeas corpus under the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). If Iromuanya's claims were "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), he is entitled to relief only by showing that the adjudication resulted in a decision that was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A state prisoner must present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. Arnold v. Dormire, 675 F.3d 1082, 1086-87 (8th Cir. 2012). Under the postconviction procedures available in Nebraska, the prisoner must have presented each § 2254 claim to the Nebraska Supreme Court, either on direct review or postconviction review, before

federal habeas review is available. Akins v. Kenney, 410 F.3d 451, 454-55 (8th Cir. 2005) (construing Nebraska law). If the prisoner fails to do so, the claim is procedurally defaulted. Id.

## B. Procedural Default

The first dispute is whether Iromuanya has fairly presented his due process claims to the state courts, and if he did, whether they were adjudicated on the merits by the Nebraska courts. Iromuanya argues the trial court violated his due process rights by failing to properly instruct the jury as previously stated. The government argues that Iromuanya did not raise these claims in briefing to the Nebraska Supreme Court on direct or postconviction appeal. Our review of Iromuanya's direct appeal and postconviction appeal briefs indicates that Iromuanya arguably did raise the due process issues, both independently and in the context of ineffective assistance of counsel claims. And while the Nebraska Supreme Court did not explicitly address all of the due process issues[3] in the denial of relief on direct appeal, it did address due process in its postconviction opinion. Iromuanya II, 806 N.W.2d at 435. The court stated:

> We reject Iromuanya's argument that the instructions relieved the State of its burden to prove beyond a reasonable doubt that the attempt to cause death was not committed during a sudden quarrel provocation. Due process requires the prosecution to prove, beyond a reasonable doubt, every fact necessary to constitute the crime charged. Here, the instruction for attempted second degree murder of Jenkins informed the jury that the State had to prove Iromuanya's intent to kill beyond a reasonable doubt. The absence of a provocation is not an element of second degree murder, and no element of the charge is presumed. If the

---

[3]The court did discuss the manslaughter lesser included instruction while disposing of Iromuanya's arguments about his theory-of-defense instruction. Iromuanya I, 719 N.W.2d at 288.

-6-

jurors had believed that Iromuanya did not intend to kill Jenkins, the instructions required them to find him not guilty of attempted second degree murder.

Id. (footnotes omitted). We find that Iromuanya adequately, though possibly inartfully, presented the due process claims to the Nebraska Supreme Court, and that the court adjudicated them. Further, even were we to find the procedural issue in doubt, we may, and in fact will, proceed to the merits of Iromuanya's claims. See Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999) (holding that while normally procedural issues should be resolved first, judicial economy sometimes dictates reaching the merits if the merits are more easily resolvable).

## C.    Merits

Because the state court adjudicated Iromuanya's due process claim on the merits, Iromuanya II, 806 N.W.2d at 435, we review under the deferential standard of 28 U.S.C. § 2254(d). Although Iromuanya's habeas corpus petition lists due process claims with multiple parts, we find that based upon his appellate briefing the claims can be distilled as follows: Iromuanya's jury should have been able to consider sudden-quarrel provocation to distinguish between second-degree murder and manslaughter, and the state has the burden of proving the absence of sudden-quarrel provocation. Iromuanya challenges the fact that the jury was precluded from considering sudden quarrel on the attempt charge (involving Jenkins and based upon the trial court's answer to the jury question), and the fact that the step instruction in the second-degree-murder charge did not allow the jury to consider sudden quarrel unless and until it found Iromuanya not guilty of second-degree murder. The Nebraska Supreme Court found that there was no due process violation and the state was not relieved of its burden to prove the elements of second-degree murder because in the State of Nebraska in 2004, "[t]he absence of a provocation [was] not an element of second degree murder." Iromuanya II, 806 N.W.2d at 435.

At this point, the state of Nebraska law on second-degree murder and manslaughter between 1994 and 2011 merits our attention. In State v. Ryan, 543 N.W.2d 128, 137 (Neb. 1996), the court reaffirmed numerous of its prior holdings that malice is, and has been for a very long time, an element of second-degree murder, despite the fact that the Nebraska legislature omitted the term "malice" from the statutory definition of second-degree murder in the 1977 revision of the Nebraska code. However, merely two years later, in Burlison, 583 N.W.2d at 36, the court overruled Ryan and numerous other cases, and held that malice is *not* an element of second-degree murder based on the statutory definition. See Neb. Rev. Stat. § 28-304 (Reissue 2016) (defining second-degree murder since 1977 as "caus[ing] the death of a person intentionally, but without premeditation").

Relatedly, manslaughter is defined in Nebraska as the killing of another, without malice, either upon a sudden quarrel or by unintentionally causing the death of another while committing an unlawful act. See State v. Pettit, 445 N.W.2d 890, 896 (Neb. 1989) (citing Neb. Rev. Stat. § 28-305(1)). The Pettit court noted that based upon the disjunctive nature of the statute and other common law principles, intent is an essential element of manslaughter committed upon a sudden quarrel (voluntary manslaughter) and intent is not an element of manslaughter when a person is killed during the commission of an unlawful act (involuntary manslaughter). Id. at 901. However, in State v. Jones, 515 N.W.2d 654, 659 (Neb. 1994), the court relied upon recent prior Nebraska cases defining "malice" and ultimately equated the concept of "malice" with intent. Id. Accordingly, the Jones court held that because manslaughter is defined to be a killing committed without malice, manslaughter is an unintentional crime. Id. Jones remained the state of the law with regard to manslaughter until 2011, when the court overruled Jones and held that voluntary manslaughter *is* an intentional crime. Ronald Smith, 806 N.W.2d at 393-94.

In Ronald Smith, the defendant was convicted of second-degree murder after killing his girlfriend, following a night of drinking and methamphetamine use, as well

as an ongoing argument between the two of them over money. Ronald pushed her from the bed and as she lay motionless on the floor, he smothered her with a pillow for one to two minutes. Before he left, he covered her with a blanket and absconded until he was arrested in Illinois. Id. at 387. On direct appeal, he argued (as Iromuanya now argues), that the jury was incorrectly instructed because the step instruction given did not allow the jury to consider whether his specific intent to kill was the result of a sudden quarrel. Id. at 390. The court acknowledged that at the time of Ronald's trial post-Jones, because manslaughter was not an intentional crime, the step instruction was the correct statement of the law at the time. Id. However, the court decided that Jones was wrongly decided (in part because it was based upon malice cases that were subsequently overruled in Burlison) and held that the state must prove intent to kill for a conviction for manslaughter upon a sudden quarrel. Id. at 392-94. Thus, the court found the step jury instruction to be erroneous. Id. at 394. However, the court also analyzed the evidence presented at trial and found that the jury could not have reasonably concluded that Ronald committed sudden-quarrel manslaughter, and therefore the erroneous jury instruction was not prejudicial. Id. at 395. The court acknowledged that although Ronald and his girlfriend were arguing and he was angry, there was no evidence that this anger would have provoked a reasonable person in Ronald's position to obscure and disturb his power of reasoning so as to make him smother her with a pillow for two minutes after he had knocked her unconscious. Id.

In State v. William Smith (William Smith I), 811 N.W.2d 720, 733 (Neb. Ct. App. 2012), the Nebraska Court of Appeals explained that during the time between Jones and Ronald Smith, "the crime of attempted voluntary manslaughter (even upon a sudden quarrel) [did] not exist in Nebraska." Id. at 734. This was so because an attempt crime required the actor to take a substantial step toward committing the crime, which was an intentional act. Because manslaughter was legally considered an unintentional crime from 1994 through 2011, a person could not "perform the same act both intentionally and unintentionally." Id. Essentially, one can *commit* an

unintentional crime, but one cannot *attempt* an unintentional crime. Furthermore, also during this time frame, the absence of sudden-quarrel provocation could not be considered an element of second-degree murder, again because of the unintentional nature of manslaughter upon a sudden quarrel between the time of 1994 and 2011. On further review to the Nebraska Supreme Court, the court ruled that the change in law announced in Ronald Smith was not a new rule of constitutional law and could therefore only be applied to cases pending on direct review (and by implication, not to cases on collateral review). State v. William Smith (William Smith II), 822 N.W.2d 401, 416 (Neb. 2012).

So, when Iromuanya committed and was tried for this crime in 2004, malice was not an element of second-degree murder, and a conviction for manslaughter did not require proof of intent. The effect of the foregoing was that the crime of attempted sudden-quarrel manslaughter did not exist (and therefore could not be considered by the jury as a lesser included offense for the attempt charge), and the absence of provocation was not an element of second-degree murder. Given all of this, the Nebraska Supreme Court found that there was no due process violation and the state was not relieved of its burden to prove the elements of second-degree murder in 2004 during Iromuanya's trial. Iromuanya II, 806 N.W.2d at 435. This was not contrary to, nor an unreasonable application of, Supreme Court precedent.

However, Iromuanya argues that In re Winship, 397 U.S. 358 (1970), Mullaney v. Wilbur, 421 U.S. 684 (1975), Patterson v. New York, 432 U.S. 197 (1977), and dicta from Martin v. Ohio, 480 U.S. 228 (1987) compel a contrary conclusion. In re Winship sets forth the outer boundaries of our inquiry as it held that the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364. Five years later in Mullaney, the Supreme Court granted habeas corpus relief because the State of Maine placed the burden of proof on the defendant to prove that he acted "in the heat of passion" to avoid a conviction

-10-

for murder (and its resulting life sentence) and reduced the homicide charge to manslaughter. 421 U.S. at 686, 700-01. The State of Maine at that time recognized two forms of homicide–murder and manslaughter. Once the state had proved that a killing was both unlawful and intentional, the jury would then consider the distinction between murder and manslaughter. In so doing, the jury was instructed that malice aforethought was implied "unless the defendant proved by a fair preponderance of the evidence that [the defendant] acted in the heat of passion on sudden provocation." Id. at 686. The Court held that the malice presumption, though subject to rebuttal, relieved the state of its due process burden to prove every element of the crime beyond a reasonable doubt, as required by In re Winship. Id. at 700-01.

A few years later, however, in Patterson, the Court distinguished Mullaney and found no due process violation where the accused was required to prove self defense by a preponderance of the evidence. Id. at 215-16. This was because the New York murder statute at issue did not have malice as an element (and did not allow the jury to presume an element, unlike in Mullaney), and thus the state was not required to "disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused." Id. at 210, 216. Ten years after Patterson, in Martin, the Court held that the State of Ohio likewise did not unconstitutionally shift the burden by requiring the defendant to prove the elements of self defense. However, the Court went on to state:

> It would be quite different if the jury had been instructed that self-defense evidence could not be considered in determining whether there was a reasonable doubt about the State's case, i.e., that self-defense evidence must be put aside for all purposes unless it satisfied the preponderance standard. Such an instruction would relieve the State of its burden and plainly run afoul of Winship's mandate.

Martin, 480 U.S. at 233-34.

-11-

To summarize applicable Supreme Court precedent: due process requires the state to prove, beyond a reasonable doubt, every fact necessary to constitute the crime with which a defendant is charged. In re Winship, 397 U.S. at 364. Due process does not, however, require the state to disprove every possible fact that would mitigate or excuse the defendant's culpability. Patterson, 432 U.S. at 207. Nor does a state legislature violate a defendant's due process rights when it allocates the burden of proving an affirmative defense to the defendant when the defense merely excuses conduct that would otherwise be punishable. Martin, 480 U.S. at 237. But when a "defense" necessarily negates an element of an offense, it is not a true affirmative defense, and the legislature may not allocate to the defendant the burden of proving the defense. Mullaney, 421 U.S. at 699-701.

Iromuanya argues that his "sudden-quarrel provocation" defense would have negated an element of the offense of attempted second-degree-murder in violation of the Mullaney rule, and that the step instruction, precluding consideration of sudden-quarrel provocation until an acquittal on second-degree-murder, violates due process as explicated by the Martin dicta, quoted above. However, the Nebraska Supreme Court's determination that there was no due process violation in connection with the sudden-quarrel instructions was not an unreasonable application of Supreme Court precedent. The state was required to prove all the elements of second-degree-murder at the time of Iromuanya's trial, in keeping with In re Winship. Sudden-quarrel provocation did not negate any element of second-degree-murder as contemplated by Mullaney because it (manslaughter) was not considered an intentional crime at the time of trial. Therefore, the finding of a sudden quarrel would not negate proof of intent, an element of second-degree murder. As the Ronald Smith court acknowledged, the argument about the step instruction was foreclosed by Nebraska law at the time of Iromuanya's trial. 806 N.W.2d at 390.

It is the state's prerogative to define the elements of its crimes. Bounds v. Delo, 151 F.3d 1116, 1118 (8th Cir. 1998) ("The elements of state law crimes are defined

-12-

by state law."); cf. Patterson, 432 U.S. at 201 ("It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government . . . ."). After Jones, there was no requirement of an intention to kill in committing voluntary manslaughter and thus attempted sudden-quarrel manslaughter did not exist in Nebraska. William Smith II, 822 N.W.2d at 415. And the characterization of sudden-quarrel manslaughter as an unintentional crime further precluded it from being an element of second-degree murder. The Iromuanya II court recognized the unique timing at issue in this case:

> So under Jones, the district court correctly instructed the jurors that they could not consider a sudden quarrel provocation in deciding whether Iromuanya was guilty or not guilty of attempted second degree murder for shooting at Jenkins. It is true that we have recently overruled our decision in Jones and held that sudden quarrel manslaughter is an intentional killing. But this decision was issued well after Iromuanya's trial and direct appeal.

806 N.W.2d at 435 (footnotes omitted). Had Iromuanya's trial occurred after Ronald Smith, the case that overruled Jones, Iromuanya's jury likely would have been instructed differently. But while Ronald Smith changed Nebraska manslaughter law, it did so on Ronald Smith's direct appeal, and this change was not retroactively applied to other cases pending on collateral review. William Smith II, 822 N.W.2d at 415-16 (noting that Ronald Smith "did not announce a new constitutional rule"). Indeed, the change in law announced in Ronald Smith did not even help Ronald Smith, as the court found that there was no evidence of sudden-quarrel provocation introduced at trial, and thus he was not prejudiced by the newly erroneous step jury instruction. Ronald Smith, 806 N.W.2d at 395.

To the extent Iromuanya implicitly complains about Ronald Smith not applying retroactively, this again is a state law problem, not a federal due process problem. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). A federal court may grant habeas

relief on the basis of a faulty state law jury instruction only if the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." Id. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). The stringent Estelle standard cannot be met here, because similar to Ronald Smith, there was likely a lack of evidence from which the jury could have concluded[4] that Iromuanya committed sudden-quarrel manslaughter instead of second-degree murder. See Ronald Smith, 806 N.W.2d at 395. The Nebraska Supreme Court's factual recitation of Iromuanya's case indicates that sudden-quarrel provocation was not really an issue during Iromuanya's trial. The jury heard Iromuanya's videotaped statement that while he was angry that he had been accused of stealing the shot glasses, he did not intend to hit Jenkins, but just wanted to scare him away. Further, Iromuanya admitted that when he fired the shot, he knew that he was no longer suspected of stealing the shot glasses. Most importantly, five minutes had passed between the initial shoving match between Iromuanya and Jenkins, and when Iromuanya fired the fatal shot. Iromuanya I, 719 N.W.2d at 275-77. These recitations are presumed to be correct. 28 U.S.C. § 2254(e). Thus, any possible error did not infect the entire trial so as to result in a denial of due process, Estelle, 502 U.S. at 72, because sudden-quarrel provocation was likely not a viable theory given the evidence presented at trial. See Ronald Smith, 806 N.W.2d at 395.

---

[4]Although Iromuanya (understandably) relies upon the jury question asking if it could consider sudden-quarrel manslaughter for the attempt charge, we really have no way of knowing what the jury was thinking when it submitted that question. It is quite possible the jury was confused by the comparison of the attempted second-degree-charge's instructions (and noted the lack of any mention of sudden-quarrel manslaughter), with the second-degree instructions which included sudden-quarrel manslaughter as a lesser included offense of second-degree murder. Having wrestled with applicable Nebraska law while considering this case, we can easily comprehend the jury's possible confusion over why the crime of attempted sudden-quarrel manslaughter did not exist in 2004.

## III.   CONCLUSION

The Nebraska Supreme Court determined that due process was not offended by either the lack of jury instructions, or the step jury instruction, with regard to sudden-quarrel manslaughter.  This adjudication was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent. The adjudication also was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  We affirm.

_____