Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/30/2018 08:15 AM CDT

State of Nebraska, appellee, v.
Greg A. Glass, appellant.
___ N.W.2d ___

Filed January 5, 2018.    No. S-16-861.

1. **Judgments: Appeal and Error.** When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.
2. **Postconviction: Evidence: Witnesses: Appeal and Error.** In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's findings unless they are clearly erroneous. In contrast, an appellate court independently resolves questions of law.
3. **Effectiveness of Counsel: Appeal and Error.** With regard to the questions of counsel's performance or prejudice to the defendant, as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.
4. **Due Process: Convictions: Proof.** The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged.
5. **Homicide: Intent: Lesser-Included Offenses.** Both second degree murder and voluntary manslaughter involve intentional killing and are differentiated by the presence or absence of the sudden quarrel provocation involved in manslaughter. If the sudden quarrel provocation exists, it lessens the degree of the homicide from murder to manslaughter.
6. **Criminal Law: Statutes: Convictions: Time: Appeal and Error.** A new rule applies to criminal cases still pending on direct review, because they are not final. As to convictions that are already final, however, the rule applies only in limited circumstances.

7. **Constitutional Law: Criminal Law: Statutes: Sentences: Time.** New substantive rules of constitutional law for criminal cases generally apply retroactively. Substantive rules include rules forbidding criminal punishment of certain primary conduct and rules prohibiting a certain category of punishment for a class of defendants because of their status or offense. Constitutional substantive rules alter the range of conduct or the class of persons that the law punishes.

8. **Criminal Law: Statutes: Convictions: Time.** Substantive rules apply retroactively, because they carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him or her.

9. **Constitutional Law: Criminal Law: Statutes: Convictions: Time.** New constitutional rules of criminal procedure generally do not apply retroactively. Most procedural rules regulate only the *manner of determining* the defendant's culpability. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.

10. **Criminal Law: Courts: Time.** Courts give retroactive effect to only a small set of "watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.

11. **Habeas Corpus: Courts: States: Jury Instructions: Due Process.** A federal court may grant habeas relief on the basis of a faulty state law jury instruction only if the erroneous instruction so infected the entire trial that the resulting conviction violates due process.

12. **Effectiveness of Counsel: Appeal and Error.** When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will look first at whether trial counsel was ineffective under the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue.

13. **Constitutional Law: Effectiveness of Counsel.** A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.

14. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. To show prejudice, a defendant must demonstrate a reasonable probability that but for his or her counsel's deficient

performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed.

Sean M. Conway, of Dornan, Lustgarten & Troia, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

MILLER-LERMAN, J.
## I. NATURE OF CASE
In 1999, following a jury trial, Greg A. Glass was convicted of second degree murder and use of a firearm to commit a felony. Glass appeals the August 25 and 30, 2016, orders of the district court for Douglas County, in which the court denied his amended and supplemental motions for post-conviction relief after holding an evidentiary hearing. The evidence received at the hearing pertained to Glass' claims relating to jury instructions at his trial and to his allegations that he had received ineffective assistance of trial and appellate counsel. Glass appeals, repeating his claim that the jury instructions given in his case denied him due process and did not comply with this court's holdings in *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011) (*State v. Ronald Smith*), which he contends applies retroactively to his case on collateral review. He also claims that the district court erred when it rejected his ineffective assistance of counsel claims. We find no error and affirm.

## II. STATEMENT OF FACTS

### 1. Background

In 1999, Glass was convicted of second degree murder and use of a firearm to commit a felony. The charges arose from the July 1998 shooting death of Glass' former employer, Adolph Fentress, Sr. Fentress was shot in the head while working at an automobile detailing shop, Downtown Auto Sales (Downtown Auto), which he co-owned. The facts for which we find support in the record are set forth in the memorandum opinion of the Nebraska Court of Appeals rejecting Glass' arguments on direct appeal. See *State v. Glass*, No. A-99-919, 2000 WL 944020 (Neb. App. July 11, 2000) (not designated for permanent publication).

At trial, Glass testified in his own defense. According to his testimony, he worked for Downtown Auto earlier in the year but had quit. Glass claimed Fentress owed him money, and he had tried to collect it on several occasions. According to Glass, at one point when he tried to collect his money, Fentress threatened him with a tire iron and told him to stay away from Downtown Auto.

Glass testified that on July 2, 1998, he had come to Downtown Auto again to collect his money, because Fentress had agreed to meet him. Glass testified that he brought a gun to protect himself because of the previous threatening encounters with Fentress. After they met, Glass and Fentress began arguing, and then Glass believed Fentress picked up a weapon. Glass testified that he retreated to the door area of the office and that Fentress came at him. According to Glass, he raised his gun and shot Fentress in self-defense. He testified that he then panicked and drove off in a red BMW from the lot.

Several eyewitnesses testified for the prosecution, including Downtown Auto employee Deon Marion. Marion testified that on the day of Fentress' death, he was working in the parking lot outside and noticed a person whom he later identified as Glass standing near the Downtown Auto building. Marion witnessed Glass call out to Fentress. Marion observed an expression from

Fentress that communicated that something was wrong. Marion went into the office and called the police. The sound of a gunshot was picked up in the recording of that telephone call.

Another eyewitness was Adolph Fentress, Jr. (Adolph), the teenage son of Fentress. Adolph testified that he observed an argument between Fentress and Glass. Adolph said that Fentress appeared to have something behind his back and overheard Glass say, "drop it." Adolph observed something under Glass' shirt, and saw Glass move toward the office, followed by Fentress. Adolph testified that Glass pulled out a gun and shot Fentress. He next observed Glass go through Fentress' pockets, remove a wallet and keys, and drive away in a red BMW that their shop had serviced. Glass was later found in the red BMW. When police arrived and processed the scene, they found Fentress' deceased body on the floor of the shop and found a tire iron next to his body.

The jury found Glass guilty of second degree murder and use of a firearm to commit a felony, and not guilty of theft by unlawful taking.

## 2. POSTCONVICTION PROCEEDINGS

Glass filed a pro se motion for postconviction relief on August 23, 2012. Among the claims set forth in the motion was a claim that trial counsel provided ineffective assistance when counsel failed to object to the "malice" definition in the jury instructions. The district court appointed counsel for Glass' postconviction proceeding. Glass then amended the motion for postconviction relief and claimed he was denied due process based on jury instructions which did not require the jury to consider manslaughter, that is, whether the killing was intentional, but provoked by a sudden quarrel, before convicting Glass of second degree murder. Glass also alleged ineffectiveness of trial and appellate counsel.

Glass argued that the instruction given in his case did not comply with our holdings in *State v. Ronald Smith* and *State v. Trice*, 286 Neb. 183, 835 N.W.2d 667 (2013). He claimed

ineffective assistance of trial counsel in three respects: failing to call witnesses who would have testified to the victim's violent and aggressive character; failing to relay a plea offer in advance of trial; and failing to obtain an expert ballistics witness who could have testified about the range of the gunshot, the path of the gunshot, or any other matters that may have aided Glass in his self-defense claim. Finally, Glass claimed that his separate appellate counsel, who was different from his trial counsel, was ineffective on direct appeal for failing to allege the foregoing claims against trial counsel.

A hearing was conducted, at which the court received evidence, including testimony from Glass and exhibits including depositions of trial and appellate counsel. In an August 25, 2016, order, the court overruled Glass' amended motion for postconviction relief. With regard to the claim regarding jury instructions on second degree murder and manslaughter, the court reasoned that the claim was procedurally barred because Glass failed to raise it on direct appeal. Alternatively, the court rejected the claim because the rule stated in *State v. Ronald Smith*, upon which Glass relied, was not a new constitutional rule that required retroactive application, but was a new criminal rule which would not be retroactively applied to cases that were final and which were not pending on direct appeal when *State v. Ronald Smith* was decided. The district court also concluded that the "step instruction" under which the jury first considered second degree murder before considering manslaughter to which Glass now objects was settled law at the time of the 1999 trial.

With regard to each of Glass' ineffective assistance of counsel claims, the court determined that there was no prejudicial error by trial counsel for failing to call a witness familiar with Fentress' aggressive character, failing to call an expert to address ballistic and autopsy findings, and failing to relay a plea offer. With regard to the failure to call a witness familiar with Fentress' character, the court noted that two witnesses testified about the behavior of Glass and Fentress prior to

the shooting and that the additional witness was not involved in the incident giving rise to the case and would not have changed the jury's perception of events. With regard to the decision not to call a forensic expert to reexamine the findings of the State's expert regarding the gunshot wound, weapon used, autopsy report, and other forensic results, the court noted that Glass' only argument for why it might be necessary was because the entrance wound was somewhat irregular. Glass did not demonstrate how a different interpretation of the evidence would affect the outcome of the case. With regard to the claim that trial counsel failed to communicate a plea offer, the court found that the evidence refuted the suggestion that a plea deal was offered by the State.

Because the court found no prejudicial error by trial counsel in connection with any of the claims, it found no prejudicial error when Glass' appellate attorney did not raise the same issues on direct appeal.

In an August 30, 2016, order, the district court also overruled a supplemental pro se postconviction motion filed by Glass. This supplemental motion alleged that the jury was incorrectly instructed at trial on second degree murder and manslaughter. The district court rejected this claim.

This appeal followed.

### III. ASSIGNMENTS OF ERROR

Glass claims that the district court erred when it rejected his postconviction allegations that his due process rights to a fair trial and impartial jury were violated by the jury instructions given at his 1999 trial and that he was prejudiced by the deficient performance of his trial and appellate counsel regarding his convictions for second degree murder and use of a firearm to commit a felony.

### IV. STANDARDS OF REVIEW

[1] When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *State v. Jones*, 297 Neb. 557, 900 N.W.2d 757 (2017).

[2] In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's findings unless they are clearly erroneous. In contrast, an appellate court independently resolves questions of law. See *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017).

[3] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. See *State v. Alarcon-Chavez, supra*.

## V. ANALYSIS

### 1. Summary of Analysis
#### of Jury Instructions

Glass filed amended and supplemental motions for postconviction relief alleging a constitutional violation under Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2016). Our analysis of the validity of Glass' claim is framed by whether he was deprived of a constitutional right. As we explain below, we conclude that Glass' constitutional rights were not abridged in connection with the jury instructions of which he complains.

Glass offers several rationales for relief which we consider, in turn, in our analysis and ultimately find unpersuasive. His several theories rest on his assertion that our decision in *State v. Ronald Smith* applies to his case and affords relief. Because we conclude that constitutional principles do not require that *State v. Ronald Smith* be applied retroactively on collateral review, that plain error did not occur, and that Glass did not suffer a constitutional violation and was not deprived of due process, we reject Glass' claim related to the jury instructions that were used at his trial.

[4] Glass contends that under the U.S. Supreme Court's retroactivity test applicable to cases on collateral review, *State*

*v. Ronald Smith* should be applied retroactively, because it announced a new substantive rule of constitutional law which violated his rights. See *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) (plurality opinion), and *Schriro v. Summerlin*, 542 U.S. 348, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004). Because it was not a new substantive constitutional rule, we reject this argument. Relying on cases such as *State v. Trice*, 286 Neb. 183, 835 N.W.2d 667 (2013), Glass next contends that the jury instruction at his trial constituted plain error requiring reversal. Because the cases on which Glass relies were on direct appeal at the time of our consideration, they are inapplicable to Glass' postconviction case on collateral review. Ultimately, Glass claims that he suffered a constitutional violation by use of the jury instruction that was given at his trial and that as such, it violated due process. We recognize that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." See *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Glass was convicted by sufficient proof of second degree murder upon a proper jury instruction regarding second degree murder. The instruction regarding sudden quarrel manslaughter, albeit now deemed faulty, did not deprive Glass of due process in connection with the charge for second degree murder of which he was convicted. See *id*.

## 2. STATE V. RONALD SMITH

In his postconviction motion, Glass claimed that he was denied his constitutional rights because the jury at his 1999 trial was given improper jury instructions regarding the manner it should consider second degree murder and sudden quarrel manslaughter and also because the elements of sudden quarrel manslaughter were inaccurate. Under the jury instructions given in this case, if the jury found proof of second degree murder beyond a reasonable doubt, the jury was not

required to consider whether the killing was the result of sudden quarrel manslaughter. Glass does not challenge the content of the jury instruction regarding second degree murder in and of itself. However, he argues that the step instruction given in his case did not comply with our holdings in *State v. Ronald Smith* and *State v. Trice, supra*.

[5] Under our holdings in *State v. Ronald Smith*, both second degree murder and voluntary manslaughter involve intentional killing and are differentiated by the presence or absence of the sudden quarrel provocation involved in manslaughter. If the sudden quarrel provocation exists, it lessens the degree of the homicide from murder to manslaughter. Following *State v. Ronald Smith*, where there is evidence that (1) a killing occurred intentionally without premeditation and (2) the defendant was acting under the provocation of a sudden quarrel, a rational jury could convict a defendant of sudden quarrel manslaughter and a jury should be given the option of convicting of either second degree murder or sudden quarrel manslaughter depending upon its resolution of the fact issue regarding provocation. See, also, *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012). Thus, a step instruction which directed the jury to convict the defendant of second degree murder if it found an intentional killing, but did not allow the jury to also consider whether the killing was provoked by a sudden quarrel, was an incorrect statement of the law.

### 3. *TEAGUE/SCHRIRO* RETROACTIVITY TEST

In its decisions in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) (plurality opinion), and *Schriro v. Summerlin*, 542 U.S. 348, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004), as well as other cases, the U.S. Supreme Court set forth a test for determining when a new rule of constitutional law will be applied to cases on collateral review. See, also, *Montgomery v. Louisiana*, ___ U.S. ___, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016). We have adopted the *Teague/*

*Schriro* retroactivity test. See *State v. Mantich*, 287 Neb. 320, 842 N.W.2d 716 (2014). The threshold question in this appeal, as asserted by Glass, is whether the new rule pronounced in *State v. Ronald Smith* applies to Glass on collateral review. If the rule were applicable on collateral review, and assuming evidence of sudden quarrel manslaughter existed, we would reverse his convictions and remand the cause for a new trial. Because Glass' convictions were final before *State v. Ronald Smith* was decided, he is entitled to relief in this postconviction case if the rule announced in *State v. Ronald Smith* applies retroactively on collateral review.

[6-8] When a decision of this court results in a "new rule," that rule applies to criminal cases still pending on direct review, because they are not final. *State v. Mantich, supra*. See *Schriro v. Summerlin, supra*. As to convictions that are already final, however, the rule applies only in limited circumstances. *Id*. New substantive rules of constitutional law for criminal cases generally apply retroactively. Substantive rules include "'rules forbidding criminal punishment of certain primary conduct'" and "'rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Montgomery v. Louisiana*, 136 S. Ct. at 728. Constitutional substantive rules "'alter[] the range of conduct or the class of persons that the law punishes.'" *Montgomery v. Louisiana*, 136 S. Ct. at 732. Such rules apply retroactively, because they "'necessarily carry a significant risk that a defendant stands convicted of "an act that the law does not make criminal"'" or faces a punishment that the law cannot impose upon him or her. *State v. Mantich*, 287 Neb. at 330, 842 N.W.2d at 724.

[9,10] New constitutional rules of criminal procedure, on the other hand, generally do not apply retroactively. *Montgomery v. Louisiana, supra*. Most procedural rules "regulate only the *manner of determining* the defendant's culpability." *Schriro v. Summerlin*, 542 U.S. at 353 (emphasis in original). They do not produce a class of persons convicted of conduct the law

does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. *Schriro v. Summerlin, supra.* "Because of this more speculative connection to innocence, we give retroactive effect to only a small set of '"watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.'" 542 U.S. at 352. Accord *Montgomery v. Louisiana, supra*. This class of rules is extremely narrow. *Schriro v. Sumerlin, supra*.

### 4. New Rule in State
#### v. Ronald Smith

Although *State v. Ronald Smith* announced a new manslaughter rule which we applied on direct review, see *State v. Trice*, 286 Neb. 183, 835 N.W.2d 667 (2013), it did not recognize a new constitutional rule, see *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012), or a new constitutional claim for purposes of timeliness as understood in Nebraska's postconviction statutes. *State v. Harrison*, 293 Neb. 1000, 881 N.W.2d 860 (2016). As discussed above, a new rule applies retroactively on collateral review only if it is (1) a constitutional substantive rule or (2) a watershed rule of criminal procedure. Glass does not argue that the rule in *State v. Ronald Smith* implicates a watershed rule of criminal procedure, and we agree. Thus, we turn to his argument that the rule applies retroactively because it is a substantive constitutional rule. As explained below, we reject this argument.

In *State v. Ronald Smith*, we clarified both that sudden quarrel manslaughter is an intentional crime and that a step jury instruction requiring a jury to acquit the defendant of second degree murder before considering sudden quarrel manslaughter is improper. In *Harrison*, we concluded that *State v. Ronald Smith* did not recognize a new constitutional claim and therefore did not toll the 1-year statute of limitations under § 29-3001(4)(d) for timely filing a postconviction motion. We explained that *State v. Ronald Smith* was based upon our

interpretation of the criminal statute that defines manslaughter, Neb. Rev. Stat. § 28-305 (Reissue 2016), not on a newly recognized constitutional right.

We conclude that the holding in *State v. Ronald Smith* that it is improper for a jury to consider second degree murder without simultaneously considering sudden quarrel manslaughter is a change to the acceptable method for the jury to deliberate and is a procedural rule change "regulat[ing] only the *manner of determining* the defendant's culpability." See *Schriro v. Summerlin*, 542 U.S. 348, 353, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004).

*State v. Ronald Smith* also interpreted the language of the manslaughter statute to clarify the intent requirement for sudden quarrel manslaughter and dispel the confusion between the statutory crimes of second degree murder and sudden quarrel manslaughter. See § 28-305(1). We believe that non-retroactivity of the *State v. Ronald Smith* rule poses no danger to Glass of a wrongful conviction for second degree murder. In the instant case, the jury found Glass guilty of second degree murder. The record shows that a rational jury could find each element of second degree murder beyond a reasonable doubt.

## 5. DUE PROCESS

Glass contends that the holdings in *State v. Ronald Smith* show that he suffered a constitutional violation, thereby depriving him of due process. We do not agree.

When Glass was tried in 1999, the criminal law in Nebraska regarding second degree murder had been clarified in *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998), and malice was not an element of second degree murder, the absence of provocation was not an element of second degree murder, and a conviction for manslaughter did not require proof of intent.

[11] In another postconviction case which concerned a 2004 homicide, *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011), we reasoned that a comparable step instruction for

second degree murder and manslaughter did not relieve the State of its burden to prove the elements of second degree murder and did not violate due process. Subsequently, the U.S. Court of Appeals for the Eighth Circuit rejected the defendant's federal habeas petition complaining that our rejection of his postconviction claims denied him due process rights. *Iromuanya v. Frakes*, 866 F.3d 872 (8th Cir. 2017). The Eighth Circuit stated that our rejection of the defendant's claims relating to his jury instructions "was not contrary to, nor an unreasonable application of, [Nebraska] Supreme Court precedent." *Id.* at 879. The Eighth Circuit offered the following quote regarding due process: "A federal court may grant habeas relief on the basis of a faulty state law jury instruction only if the erroneous instruction 'so infected the entire trial that the resulting conviction violates due process.'" *Id.* at 881 (quoting *Estelle v. McGuire*, 502 U.S. 62, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991)). The Eighth Circuit added that complaints about the retroactivity of *State v. Ronald Smith* are "not a federal due process problem," *Iromuanya v. Frakes*, 866 F.3d at 881, thus leaving the issue for our resolution.

Applicable U.S. Supreme Court precedent for due process requires the State to prove beyond a reasonable doubt every fact necessary to constitute the crime with which a defendant is charged. See *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). At Glass' trial, as we have noted, the State was required to prove beyond a reasonable doubt each of the elements of the crime of which Glass stands convicted, second degree murder. The suggestion by Glass that the jury might have convicted him of sudden quarrel manslaughter does not defeat the validity of his second degree murder conviction on collateral review where the conviction was supported by sufficient evidence. We conclude that notwithstanding our holdings in *State v. Ronald Smith*, given the sufficient evidence of the commission of second degree murder, Glass' due process right to trial by an impartial jury was not offended by the step jury instruction requiring the jury to first acquit

Glass of second degree murder before considering sudden quarrel manslaughter, or by defining manslaughter as an unintentional crime.

### 6. Ineffective Assistance
### of Counsel

[12] Glass was represented by different counsel at trial and on appeal. Glass sought postconviction relief for the alleged ineffective assistance provided by his trial counsel and appellate counsel. When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel ("a 'layered' claim of ineffective assistance of counsel"), an appellate court will look first at whether trial counsel was ineffective under the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *State v. Dubray*, 294 Neb. 937, 953, 885 N.W.2d 540, 554 (2016). If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. *State v. Dubray, supra.*

[13,14] Before considering Glass' specific claims for postconviction relief, we review the applicable general standards. The Nebraska Postconviction Act, § 29-3001 et seq., provides that postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *State v. Starks*, 294 Neb. 361, 883 N.W.2d 310 (2016). A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial. *State v. Vela*, 297 Neb. 227, 900 N.W.2d 8 (2017). To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington, supra*, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Vela, supra*. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate

a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Vela, supra*. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id*.

Following our independent review, we conclude that the district court did not err when it rejected Glass' ineffective assistance of counsel claims after an evidentiary hearing.

### (a) Trial Counsel's Failure to Call a Witness to Testify to the Victim's Violent Character

Glass alleged that trial counsel was ineffective because he failed to call a potential witness who would have testified that Fentress generally had a reputation for being violent. In his testimony, Glass' trial counsel denied that Glass told him about "any witnesses whatsoever" who would have testified about Fentress' tendency for violence.

The record shows that the additional witness now proposed by Glass was not involved in the incident giving rise to the case and, we believe, even if relevant, would not have changed the jury's perception of events. As the district court noted in its order, two witnesses testified at trial about the behavior of Glass and Fentress prior to the shooting. Even if admitted, the proposed additional witness testimony would have been cumulative and Glass was not prejudiced by trial counsel's alleged failure to call the potential witness. See *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016). We find no prejudicial error.

### (b) Trial Counsel's Decision Not to Retain an Expert to Address Ballistic and Autopsy Findings

Glass alleged that trial counsel was ineffective by failing to retain and call an expert to address ballistic and autopsy

findings at trial. Glass' trial counsel testified that he never considered retaining an independent expert, because he saw no reason to do so; he was comfortable with the autopsy findings, and based on his experience, he knew that the conclusions about the lack of stippling and its correlation to the distance between the shooter and the victim was accurate and consistent with the evidence.

With regard to the decision not to call a forensic expert to reexamine the findings of the State's expert regarding the gunshot wound, weapon used, autopsy report, and other forensic results, the district court in its order noted that Glass' only argument for why such evidence might be necessary was because the entrance wound was somewhat irregular. Glass did not present evidence or a specific explanation of how a different interpretation of the evidence would have affected the outcome of the case. Trial counsel was not deficient in failing to engage a ballistics expert.

### (c) Trial Counsel Not
### Relaying Plea Offer

Glass alleged that his trial counsel was deficient and that he was prejudiced because counsel failed to look into and relay a plea offer by the State. At the hearing on his amended motion, Glass testified that he asked his trial counsel to look into a potential plea deal. Approximately 9 years after his trial, Glass claims that his family told him that the State had "supposedly" extended a plea offer of manslaughter. At the evidentiary hearing, Glass' trial counsel testified that there was never a plea offer from the State, that the State was adamant about taking the case to trial, and that if the State would have allowed Glass to plead to manslaughter, counsel would have relayed it to Glass and definitely advised him to accept the deal. The district court found trial counsel's testimony credible and determined that there was no deficient performance by trial counsel for not relaying a plea offer, because Glass did not show the existence of a plea offer by the State, other than by an unsubstantiated

rumor. The district court's findings are not clearly erroneous, and they support the district court's rejection of this claim. *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017). The district court did not err.

### (d) Ineffectiveness of Appellate Counsel Claims

Glass also alleged ineffectiveness of appellate counsel for failing to raise the above issues on direct appeal. Because the court found no prejudicial error by trial counsel in connection with any of the claims, it found no prejudicial error when Glass' appellate attorney did not raise the same issues on direct appeal. *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016).

Direct appeal counsel testified that he did not recall Glass' asking him to raise claims of ineffective assistance of trial counsel based on Glass' present allegations. This testimony is also supported by a letter to appellate counsel regarding claims for ineffective assistance of trial counsel in which Glass made no mention of the three ineffective assistance of counsel claims Glass is currently raising.

As noted above, trial counsel was not deficient and appellate counsel was not ineffective when he did not raise the claims Glass now asserts without success. Accordingly, we conclude that the district court did not err when it concluded that Glass' allegations regarding appellate counsel's performance were without merit, and we therefore affirm the orders denying postconviction relief.

### VI. CONCLUSION

As explained above, we conclude that the holdings in *State v. Ronald Smith* do not apply to Glass retroactively on collateral review. The State was required to prove each element of the crime of second degree murder of which Glass stands convicted, and because the evidence was sufficient, Glass' convictions did not offend his due process rights. Further, we

have reviewed Glass' claims of ineffectiveness of trial and appellate counsel and agree with the district court that they are without merit. Accordingly, we conclude that the district court did not err when it denied Glass' amended and supplemental motions for postconviction relief.

AFFIRMED.

WRIGHT, J., not participating in the decision.