IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. DE LOS SANTOS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ANTHONY DE LOS SANTOS, APPELLANT.

Filed June 19, 2018.    No. A-17-256.

Appeal from the District Court for Scotts Bluff County: RANDALL L. LIPPSTREU, Judge. Affirmed.

Leonard G. Tabor for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.

MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Anthony De Los Santos appeals from his conviction in the district court for Scotts Bluff County for burglary. He was also found to be a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2016). On appeal, he asserts that the evidence was insufficient to sustain his conviction, that the State improperly induced him to waive his right to a preliminary hearing, that he received ineffective assistance of trial counsel, and that the court imposed an excessive sentence. Finding no error, we affirm.

## II. BACKGROUND

The State filed a criminal complaint in the county court for Scotts Bluff County on December 31, 2015, charging De Los Santos with burglary, in violation of Neb. Rev. Stat. § 28-507

(Reissue 2016), a Class IIA felony. The charge stemmed from a forced entry and theft on December 25 at a Burger King restaurant in Scottsbluff, Nebraska.

The case was scheduled for a preliminary hearing in county court, but De Los Santos subsequently waived his right to a preliminary hearing. In its journal entry binding the case over to district court, the county court found that De Los Santos had been previously advised of the nature of the charges and all possible penalties and rights and that he had knowingly, intelligently, and voluntarily waived his right to a preliminary hearing. On August 11, 2016, the State filed an information in the district court, charging De Los Santos with burglary and being a habitual criminal.

A jury trial was held in the district court on January 23 through 25, 2017. The State presented testimony from law enforcement officers and Burger King employees and offered exhibits, including crime scene photographs and surveillance video footage. De Los Santos offered testimony from another investigating police officer.

The evidence shows that on December 25, 2015, Scottsbluff police were called to investigate a burglary at a Burger King restaurant after a sheriff's deputy received a call about a safe being located "out in the country" with "a lot of items," such as "Burger King coupons." The investigation showed that someone had forced open the drive-through window of the restaurant and the door to the restaurant's office, stealing the safe from the office and about $6,200. The restaurant's security alarm system was not working properly at the time of the burglary, which was known by some of the restaurant's management employees.

Items of evidence found in the restaurant office included a crowbar and a ball peen hammer. Outside of the office door, police recovered several pieces of paper with footprints on them. The papers were sent to the Nebraska State Patrol for footwear analysis, but the lab was unable to reach any conclusions about the type of shoes worn by the suspect. Police also located a two-wheel dolly that did not belong to the restaurant. The safe, from which the front door had been removed, was recovered at a location outside of Scottsbluff, along with an assortment of Burger King coupons, keys that belonged to the restaurant, and empty cash drawers. Police observed some red fabric caught on the safe but did not conduct analysis of the material.

Police obtained surveillance footage of the burglary, which showed a suspect wearing a ski mask break into the restaurant's office and remove the safe using the dolly. The suspect had extremely thick eyebrows. The surveillance video was played for the jury at trial.

One police officer who viewed the surveillance video thought he recognized the suspect as a man named "Michael Valdez," but he eliminated Valdez as a suspect after learning that Valdez was in jail at the time of the burglary. Another officer watched the video and then looked for "any similarities" in images on the Facebook pages of some of the Burger King employees. After she found a picture and the Facebook user name of a man she believed looked like the suspect, the officer compared images from Facebook and police databases and identified De Los Santos as the suspect shown in the Burger King surveillance video. According to the officer, in looking for similarities between the surveillance video and the Facebook pictures from which De Los Santos was identified, the facial features that "stuck out" to her were the nose and eyebrows. Copies of images, including some still images from the surveillance video and some of the Facebook images, were sent by police to someone at the Nebraska Department of Motor Vehicles who performs

facial recognition analysis, but that individual was not able to reach any conclusions from his analysis.

De Los Santos's sister worked at the Burger King as an assistant manager. She is the mother of Valdez whom police rejected as a suspect due to his incarceration. De Los Santos' sister eventually identified De Los Santos to police from pictures of the surveillance footage and testified at trial that the suspect in the surveillance video "looked like him." At trial, she testified that she was not certain how long De Los Santos had been in town prior to the burglary, but she agreed that she told police he had been in town since the Sunday before Thanksgiving, testifying that she learned this information from her mother.

The jury found De Los Santos guilty of burglary. On February 7, 2017, an enhancement and sentencing hearing was held before the district court. The court found that De Los Santos was a habitual criminal. The court then sentenced him to incarceration for a period of 12 to 20 years, which included a mandatory minimum of 10 years due to the habitual criminal enhancement, and gave him credit for 327 days of time served.

## III. ASSIGNMENTS OF ERROR

De Los Santos asserts, reordered, that (1) there was insufficient evidence to sustain his conviction, (2) the State induced him to waive his right to a preliminary hearing in return for a promise not to file an additional charge, (3) he received ineffective assistance of trial counsel, and (4) the district court imposed an excessive sentence.

## IV. STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Wofford*, 298 Neb. 412, 904 N.W.2d 649 (2017). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Lane*, 299 Neb. 170, 907 N.W.2d 737 (2018). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Russell*, 299 Neb. 483, 908 N.W.2d 669 (2018). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

De Los Santos asserts that there was insufficient evidence to sustain his conviction. "A person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value." § 28-507. Evidence of any act of physical force, however slight, by which an obstruction to the entry of premises is removed is sufficient to prove the essential element of breaking as used in the statutory offense of burglary. *State v. Greer*, 257 Neb. 208, 596 N.W.2d 296 (1999). Intent sufficient to support a conviction for burglary may be inferred from the facts and circumstances surrounding an illegal entry. *State v. Nero*, 281 Neb. 680, 798 N.W.2d 597 (2011).

The evidence shows that a male individual with extremely thick eyebrows forced open both the Burger King drive-through window and office door and removed a safe containing approximately $6,200. The evidence shows that De Los Santos was in Scottsbluff at the time of the burglary, his sister worked in the restaurant as an assistant manager, and management staff were aware of issues with the restaurant's security alarm system. Both a police officer and De Los Santos' sister identified him as the burglar from surveillance footage. The surveillance video was received into evidence and played for the jury, who was also shown photographs of De Los Santos, in which his thick eyebrows were visible, and still pictures taken from the surveillance video. De Los Santos was present in court, and the jury would have been able to make its own comparisons between him and the suspect shown in the surveillance video. When viewed in the light most favorable to the State, the evidence is sufficient for any rational trier of fact to have found the essential elements of burglary beyond a reasonable doubt.

### 2. WAIVER OF PRELIMINARY HEARING

De Los Santos asserts that the State improperly induced him to waive his right to a preliminary hearing in return for a promise not to file an additional charge, specifically, the habitual criminal enhancement. On appeal, De Los Santos analogizes to cases involving pleas of guilty induced by coercion. However, the present case does not involve a plea, and De Los Santos did not follow the proper method for challenging the validity of his waiver of the preliminary hearing in county court. Rather than filing a motion to quash or plea in abatement, he waited until the enhancement hearing to challenge the State's filing of the information, which included the habitual criminal enhancement. He does not challenge on appeal the county court's finding that the waiver of his right to a preliminary hearing was made knowingly, intelligently, and voluntarily.

De Los Santos testified briefly at the enhancement hearing in this case to express his concerns about the district court proceeding with enhancement. He offered two exhibits, which were received by the district court: a copy of an email from the prosecutor to De Los Santos' attorney concerning waiver of the preliminary hearing in the county court and a copy of the county court's journal entry, stating that De Los Santos had waived his right to a preliminary hearing and that the case was bound over to the district court. At De Los Santos' request, the district court also took judicial notice of the information filed by the State in district court, and a copy of the

information was marked and included in the bill of exceptions on appeal. The court rejected De Los Santos' argument, noting that the information filed in district court clearly included a habitual criminal charge, the case was tried on the information that included the habitual criminal charge, and De Los Santos did not raise the issue of waiver of his preliminary hearing until the date of the enhancement hearing.

The purpose of a preliminary hearing is to ascertain whether a crime was committed and whether there is probable cause to believe the accused committed it. *State v. Nesbitt*, 264 Neb. 612, 650 N.W.2d 766 (2002). The failure to hold a preliminary hearing, as opposed to a challenge to the sufficiency of evidence at a preliminary hearing, may be raised by a motion to quash or a plea in abatement. *State v. Hill*, 255 Neb. 173, 583 N.W.2d 20 (1998). The proper method of objecting to trial in the district court for the insufficiency of a preliminary hearing, or the failure to provide one at all, is by motion to quash or a plea in abatement before an attack on the merits. *Id.* See, also, *State v. Nesbitt, supra* (defendant could have filed plea in abatement or motion to quash to challenge validity of waiver of preliminary hearing; defendant's failure to file plea in abatement or motion to quash to challenge validity of waiver of preliminary hearing barred him from litigating in postconviction motion issue that could have been raised and litigated earlier). Further, any error in ruling on a plea in abatement is cured by a subsequent finding at trial of guilt beyond a reasonable doubt which is supported by sufficient evidence. *State v. Green*, 287 Neb. 212, 842 N.W.2d 74 (2014). See, also, *State v. Nesbitt, supra* (any defect in defendant's waiver of preliminary hearing was cured by jury's subsequent finding of guilt beyond a reasonable doubt).

The proper method for De Los Santos to challenge the validity of his waiver of the preliminary hearing would have been to file a plea in abatement or motion to quash. Although he did not do so, any defect in his waiver of the preliminary hearing was cured by the jury's subsequent finding of guilt beyond a reasonable doubt. This assignment of error is without merit.

### 3. Ineffective Assistance of Counsel

De Los Santos asserts that he received ineffective assistance of trial counsel, and he argues multiple instances of ineffective assistance arising during the criminal proceedings against him. He is represented on direct appeal by different counsel than trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Lane*, 299 Neb. 170, 907 N.W.2d 737 (2018). Otherwise, the issue will be procedurally barred. *Id.*

To prevail on a claim based on counsel's ineffective assistance, the defendant must show, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), that counsel's performance was deficient. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017). In other words, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* To show prejudice, a defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Glass*, 298 Neb. 598, 905 N.W.2d 265 (2018). A reasonable probability does not require that it be more likely than not that the

deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.* The two prongs of the test governing a claim of ineffective assistance of counsel, deficient performance and prejudice, may be addressed in either order. *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017).

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018).

When an ineffective assistance of counsel claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Casares, supra.* General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *Id.* An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id.*

When reviewing a claim of ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics, and an appellate court will not second-guess reasonable strategic decisions by counsel. *State v. Nolt, supra.* When considering whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *Id.*

The record is sufficient to address two of De Los Santos' ineffective assistance claims. We first address those we can decide on the present record.

### (a) Directed Verdict

In his fifth allegation of ineffective assistance of counsel, De Los Santos argues that his trial counsel was ineffective for failing to move for a directed verdict at the close of the State's case and at the close of the defense case. We have already determined that the evidence was sufficient to support De Los Santos' conviction. Any motion for directed verdict would have been unsuccessful. De Los Santos is unable to prove prejudice with respect to this claim, and we find it to be without merit.

### (b) Motion to Suppress/Objection to Seized Letter

In his tenth allegation of ineffective assistance of counsel, De Los Santos argues that his trial counsel was ineffective because he did not file a motion to suppress any evidence obtained by the search warrant served shortly before trial, wherein a letter was seized by law enforcement. He argues that the affidavit in support of the search warrant violated his due process rights because it was "not executed properly, entailed improper procedure, improper address on the warrant itself,

etc." Brief for appellant at 22. Other than the letter, De Los Santos does not identify any specific evidence which should have been suppressed.

De Los Santos is presumably referring to a letter admitted into evidence as exhibit 23 and the corresponding envelope, which was admitted as exhibit 22. De Los Santos' sister identified the letter as one De Los Santos sent to her before trial, although it showed her nephew's name in the return address portion of the envelope. According to the sister, she did not see the letter before trial because police served a search warrant at her house and retrieved the letter from her mailbox. In the letter, De Los Santos encourages his sister not to "trip" about "that subpoena" and that "all you got to say is: It was a mistaken iden[t]ity."

De Los Santos asserts that the letter was altered and there were "three missing pieces" from the letter which would have "explained said letter in its entirety." Brief for appellant at 23. He argues that his attorney should have objected to the letter being received into evidence at trial because a copy of it was not properly provided to defense counsel during discovery. He also argues that his attorney should have objected to receipt of the letter on the bases of relevance and foundation.

De Los Santos' attorney did in fact object to the receipt of the letter on the basis of improper impeachment. He also objected to receipt of the envelope on the basis of relevancy, given that it was addressed as being from the sister's nephew. Even if his attorney was deficient for failing to object on other grounds or to file a motion to suppress the letter and envelope, De Los Santos cannot show that he was prejudiced by his attorney's alleged deficient performance. He cannot show that the result of the trial would have been any different had the letter been excluded. As discussed above, there was ample evidence to support his conviction. See *State v. Glass*, 298 Neb. 598, 905 N.W.2d 265 (2018). Finally, De Los Santos does not identify any evidence obtained by the search warrant other than the letter, so his claim as to any other evidence so obtained is not properly raised in this appeal. This allegation of ineffective assistance of counsel is without merit.

(c) Insufficient Record for Remaining Claims

The record is insufficient to review De Los Santos' five remaining claims of ineffective assistance of trial counsel. De Los Santos' first, second, and fourth claims, collectively, essentially refer to the same subject matter. De Los Santos claims that his attorney advised him that if he waived his preliminary hearing, the State would not file the habitual criminal charge. De Los Santos claims that when the information was filed with the habitual criminal charge, his attorney should have filed a motion to quash or a plea in abatement in an effort to secure compliance with the alleged agreement. The record on direct appeal is insufficient to address these claims since it contains no evidence of any alleged agreement concerning waiver of the preliminary hearing in exchange for the State not pursuing the habitual criminal charge or of discussions between De Los Santos and his attorney regarding this issue.

De Los Santos also asserts that his trial attorney refused his request to obtain depositions of several of the State's witnesses, including his sister, failed to file a motion for DNA/fingerprint analysis or to ask the State's law enforcement witnesses whether that had been done, failed to have the jury present when one of the police officers refreshed his recollection by watching a portion of an interview with De Los Santos' sister, failed to call the State's facial recognition expert as a

witness despite being requested to do so by De Los Santos, and failed to call De Los Santos and his wife as alibi witnesses or to file a notice of alibi with the court.We find De Los Santos made sufficiently specific allegations regarding these claims; however, they involve matters of trial strategy and require an evidentiary hearing. Thus, the present record is insufficient to resolve De Los Santos' remaining claims.

## 4. EXCESSIVE SENTENCE

De Los Santos was convicted of burglary, which due to the habitual criminal enhancement, was punishable by a mandatory minimum of 10 years' imprisonment and a maximum term of 60 years. § 29-2221. The district court imposed a sentence of 12 to 20 years' imprisonment (including a mandatory minimum of 10 years), which was within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* However, the sentencing court is not limited to any mathematically applied set of factors. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observations of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life. *State v. Wofford*, 298 Neb. 412, 904 N.W.2d 649 (2017).

A review of the record and presentence investigation report (PSR) shows that the district court considered the relevant factors and did not abuse its discretion in imposing sentence. De Los Santos was 43 years old at the time of the PSR. He graduated from high school and has certification from a community college as an "Auto Body Tech/Carpenter." He is married, has one adult biological child with his wife, and helped raise another adult biological child of his wife. De Los Santos was employed prior to his arrest in 2016. De Los Santos has a lengthy criminal history, both adult and juvenile, including many previous convictions for thefts, burglaries, and larcenies. On the Level of Service/Case Management Inventory, he scored in the high risk to reoffend category. A review of the record from the sentencing hearing shows that the court considered the relevant factors. The court did not abuse its discretion in considering the relevant factors and did not impose an excessive sentence. Accordingly, we affirm De Los Santos's sentence following his conviction for burglary with a habitual criminal enhancement.

## VI. CONCLUSION

The evidence was sufficient to support De Los Santos' conviction. He is procedurally barred from challenging the validity of his waiver of the preliminary hearing in county court. As set forth above, De Los Santos' allegations of ineffective assistance of trial counsel are either

without merit or the record is insufficient to review them on direct appeal. The district court did not impose an excessive sentence.

AFFIRMED.